## DUNITZ *v.* SATOVSKY.

1. MORTGAGES — EQUITY—JURISDICTION — COURT HAVING JURISDICTION WILL RETAIN IT TO AWARD DAMAGES.

   Where it was necessary for plaintiffs to appeal to a court of equity to compel a reconveyance of their property after they had paid the secured debt, the court properly retained jurisdiction to determine their claim for damages for refusal to reconvey.

2. SAME—DAMAGES—EVIDENCE—SUFFICIENCY.

   Where plaintiffs claimed damages because of their inability to consummate an advantageous sale, due to defendants' refusal to reconvey, defendants' claim that said sale was not made in good faith, *held*, not sustained by the record.

3. SAME—MEASURE OF DAMAGES CAUSED BY LOSS OF SALE.

   Plaintiffs, who lost a sale of their property by reason of defendants' wrongful refusal to reconvey, are entitled to damages therefor, the measure of which is the difference between the sale price and the market value at the time.

4. APPEAL AND ERROR—DAMAGES—DECREE MODIFIED.

   Where the testimony of competent witnesses showed that plaintiff's loss was $3,000, the decree of the court below allowing them $3,661.61, is modified, on appeal, by a reduction of $661.61.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted April 27, 1928. (Docket No. 152, Calendar No. 33,700.) Decided July 24, 1928.

Bill by Max Dunitz and another against Max Satovsky and others to quiet title to land, and to recover damages for loss of a sale of the premises. From a decree for plaintiffs, defendants appeal. Modified and affirmed.

*Shapero & Shapero,* for plaintiffs.

*Friedman, Meyers & Keys,* for defendants.

MCDONALD, J. The plaintiffs filed this bill to quiet title to certain real estate in the city of Detroit, Michigan, and to recover damages for loss of a sale of the premises. The property involved is located at 3350 Glendale avenue, Detroit. The plaintiffs owned the fee. On January 9, 1926, they deeded it to Harry B. Dizik, one of the defendants, to secure the payment of certain taxes on another piece of property for which Harry Dunitz, a brother of the plaintiff, was indebted. The deed was absolute in form but was accompanied by an agreement showing that it was intended as security only, and containing a promise to reconvey when the taxes were paid. On January 12, 1926, Dizik deeded the property to defendants Max Satovsky and Harry Satovsky, who took it with full knowledge that the conveyance to Dizik was for security merely. The taxes, to secure the payment of which the deed was given, were paid on May 29, 1926. A reconveyance was demanded and refused. In the meantime, the plaintiffs claim that they had an opportunity to sell the property and would have done so had it not been for the recorded deeds showing title in the defendants. To recover damages for loss in failure to make the sale and to compel the defendants to reconvey the property to them, they began this suit. When the case came on for hearing, the circuit judge called a jury to assist him in determining the facts and in assessing the damages. The jury found for the plaintiffs and assessed their damages in the sum of $3,661.61. The court entered a decree requiring the defendants, Harry Satovsky, Max Satovsky, Ann Satovsky, and Mildred Satovsky to pay the plaintiffs the sum of $3,661.61 and to reconvey to them the premises in question. From this decree the defendants have appealed.

There can be no question as to the right of the plaintiffs to a reconveyance of the property. The real

controversy relates to the damages claimed. In submitting the issues to the jury, the court said:

"So, you can perceive from this somewhat brief resumé of the matters involved in this litigation, that it presents, as all counsel agreed in the beginning of this case, a question of fact for our consideration and determination. Counsel said there was no question of law involved, but purely a question of fact as to whether or not the Dunitzes were damaged by reason of the situation, and what these damages were, if they were damaged."

When the taxes were paid on May 29, 1926, the plaintiffs were entitled to a reconveyance. They did not succeed in getting it. And because thereof they say that they were unable to furnish a marketable title to the property and lost an advantageous sale to one Abraham Kamper, with whom they had entered into a preliminary contract in writing whereby he agreed to pay $30,000 for the property, of which he paid $500 when the preliminary agreement was executed, and was to pay $4,500 when a satisfactory abstract was furnished. It is charged that, because of the defendants' refusal to reconvey, the plaintiffs could not furnish such an abstract, and, for that reason, they were compelled to cancel the contract and return the down payment to the purchaser.

The plaintiffs contend in their brief that the defendants' wrongful act in refusing to sign a quitclaim deed in release of the property makes them liable for damages under section 11745, 3 Comp. Laws 1915, which provides a penalty and authorizes the recovery of actual damages for refusal to discharge a mortgage after it has been satisfied.

It is the claim of the defendants that this statute has no application to a refusal to reconvey when a warranty deed is given as security and the debt is satisfied. We are of the opinion that the statute provides

no remedy for the plaintiff in this case. *Bullington* v. *Lowe,* 94 Okla. 234 (221 Pac. 502).

But it is not necessary to discuss that question. The action does not seem to have been laid under this statute. The pleadings make no reference to it. The record nowhere shows that it was considered by the trial court at any time. The plaintiffs did not ask for the penalty and none was allowed. The only relief asked for was a reconveyance and actual damages. Independent of the statute, the plaintiffs had an action at law for the recovery of damages which followed from the refusal to reconvey. They also had an action in chancery to compel the reconveyance after the debt was paid. But counsel for the defendants insist that the trial court, sitting in equity, had no jurisdiction to give damages. Counsel would be right if there was nothing before the court except a naked question of damages. Before the question of damages was reached, the plaintiffs had made a case for equitable relief by showing their right to a conveyance. It was proper to try both questions in the chancery case. It is not the policy of the court to compel a suitor to have two lawsuits when the entire issue between the parties can be tried in one. Especially is it true in this case, where the defendants had the advantage of a jury as well as the judgment of the trial judge and have a hearing *de novo* in this court.

In *Brown* v. *Gardner,* Har. Ch. 291, it was said:

"But it is argued that as the court has acquired jurisdiction for the purpose of granting the injunction, it should retain it for the purpose of giving damages to the complainant. It would be competent for this court so to do. It is sometimes done."

"There is no authority for holding that equity can grant damages unless there is some case of equitable relief made out also, to which the damages would be

applicable or subsidiary." *Bourget* v. *Monroe,* 58 Mich. 563.

"In this State equity has not taken jurisdiction of cases where a suitor has a full, complete, and adequate remedy at law, unless it is shown that there is some feature of the case peculiarly within the province of a court of equity." *Detroit Trust Co.* v. *National Bank,* 155 Mich. 61.

In this case it was necessary for the plaintiffs to appeal to a court of equity to compel a reconveyance of their property. Having acquired jurisdiction for that purpose, the court properly retained it to determine the claim for damages.

As to the damages, the defendants contend that the sale to Kamper was not a good-faith transaction, and that if it were the plaintiffs wholly failed in their proofs to establish damages with sufficient certainty to permit of a recovery.

There is nothing in the record which would warrant the conclusion that the sale to Kamper was not made in good faith. It was evidenced by a writing. The down payment was shown by canceled check. There was no default on the part of Kamper. He submitted the question of title to his attorney and was advised not to consummate the deal unless Dunitz procured a reconveyance from the defendants. The plaintiffs were diligent in their efforts to secure the reconveyance. They appealed to the defendants orally and by registered mail. They notified them of the pending sale, that it was advantageous to them, and that they would suffer a loss if defendants continued to withhold the title. It is undisputed that the sale failed because of the refusal of the defendants to execute a reconveyance. The defendants attempted to show that Kamper was financially unable to make his payments. On cross-examination, they succeeded in establishing the fact that he had very little money in the bank with which to meet the

$4,500 payment. But he testified that he was able and willing to perform the contract, and offered convincing evidence that he had just previously sold some real estate on which he had received a down payment of $6,200. The record shows no merit in the claim that the sale to Kamper was not a *bona fide* sale.

The plaintiffs are entitled to such damages as naturally followed from the wrongful act of the defendants in withholding a reconveyance. By reason of this wrongful act, they lost a sale of their property. In such case the measure of damages would be the difference between the sale price and the market value at the time. The sale price is fixed at $30,000 by the contract. The plaintiffs showed the market price by witnesses familiar with real estate values. The defendants offered no testimony on the valuation. They rely on the weakness of plaintiffs' proofs.

Chester W. Peddie was called by the plaintiffs to testify to the value in July, 1926. He was well qualified. He placed the market value at $27,000 on a time sale such as was made to Kamper. He thus definitely fixed the plaintiffs' damages at $3,000.

John D. Morton was called. His business is valuing and appraising property for the New York Life Insurance Company. He has had an extensive experience in appraising Detroit real estate. He testified that the market value on a cash sale was "anywhere from $22,000 to $25,000." Later he definitely placed it at $24,000. On cross-examination, he became somewhat tangled up and made a few confusing computations, but it is quite clear that he meant to fix $24,000 as the cash market value and $27,000 as the value on a time sale.

Max Dunitz, one of the plaintiffs, testified that the market value on a time sale was $25,000, but on cross-examination it appeared that he based his estimate on the cost of the property to him. We eliminate his

testimony. It has no worth in establishing damages. That leaves for our consideration the testimony of Mr. Peddie and Mr. Morton, both of whom testified that the difference between the market value and the contract price was $3,000. Giving full credit, as we should, to the testimony of these two witnesses, the plaintiffs' damages were shown to be $3,000. The decree allowed them $3,661.61. In respect to the amount of damages, the decree is modified by a reduction of $661.61. In all other respects it is affirmed.

As the defendants have secured a substantial reduction in the amount of damages allowed by the decree, they are entitled to costs in this court.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred.