MERITHEW v. BENNETT.

1. MECHANICS' LIENS—TENANT AS LANDLORD'S AGENT—IMPROVEMENTS.

Generally, where the landlord binds the tenant to make substantial improvements upon the property he thereby constitutes the latter his agent within the meaning of the mechanics' lien law and his property is subject to the lien for labor performed and material furnished in making such ,improvements under the contract with the tenant.

2. SAME—TENANT AS LANDLORD'S AGENT—PAYMENT FOR IMPROVEMENTS FROM RENTALS.

Where four-year lease contained provision for installation of a new furnace and for an addition to combination gasoline station, lunch room, beer garden and dance hall by applying entire rent toward payment for such improvements, the tenant was the agent for the owner to enter into the contract, hence the property was subject to lien for labor performed and materials furnished to make the improvements (3 Comp. Laws 1929, § 13114 et seq.).

Appeal from Ionia; Cash (Paul R.), J., presiding. Submitted October 4, 1945. (Docket No. 46, Calendar No. 43,001.) Decided December 3, 1945.

Bill by Don Merithew, doing business as Vickeryville Lumber Company, against Anna M. Bennett and another to foreclose a mechanic's lien. Decree dismissed bill as to Anna M. Bennett. Plaintiff appeals. Reversed.

*Colwell & Welch,* for plaintiff.

*F. O. Eldred,* for defendant.

· BUTZEL, J. Plaintiff, doing business as the Vickeryville Lumber Company, brought suit against Anna M. Bennett, record owner of certain property, and Parmer Beahan, the lessee, under a written lease, defendants herein, to foreclose a mechanic's lien filed against the 40 acres in Lyons township, Ionia county, Michigan, on which the leased building stood. Inasmuch as the attorney for defendant Bennett conceded at the hearing that there was nothing technically wrong with the "lien papers," we limit our discussion solely to the question of whether the lumber company is entitled to a lien for labor performed and materials furnished in the improvement of the building standing on the land described. The trial judge held in favor of defendant Bennett.

Mrs. Bennett was the title owner of the property. Her sons, Orland C. Bennett and Robert O. Bennett, had some interest in the property as .Orland and Robert had furnished money and labor to build the improvements on the property, which consisted of a combination gasoline station, lunch room, beer garden and dance hall, called the Log Cabin. The lease was signed by Mrs. Bennett and both her sons although Mrs. Bennett is the sole record holder of the title to the property. Orland C. Bennett prior to the making of the lease collected the rents from the building, paid the taxes and other expenses, and supported his mother. Defendant Beahan had been a lessee of the premises since February, 1939. In 1941, he wanted them enlarged and asked for and received a written lease which provided for his making the improvements and the reimbursement for them from the rents to accrue. The rent prior to entering into the lease was $25 per month. However, on September 20, 1944, when the new lease was executed by virtue of which Anna M. Bennett would become the owner of the additions to the building and the im-

provements to be made, the rent was raised to $40 per month with the proviso that the addition and improvements were to be paid from the rents. The provision in the lease was peculiarly drawn. It reads as follows:

"That said tenant does hereby hire said premises for the term of four years, as above mentioned and does hereby covenant and promise to pay to the landlord, as rental of said premises the sum of $40 per month and in the event of tenant's business shall exceed $2,000 per month gross said tenant shall pay $45 per month for each such month, said monthly rental shall be applied on a modernization loan for the installation of air-conditioning furnace and 25-foot addition to present existing building, estimated cost of said addition and furnace to be approximately $1,300. As the monthly payments to C. I. T. (finance company) will be approximately $60 there will be a surplus each month over the $40 rent payment, which shall be placed in a future rent fund and at the end of 18 months when modernization loan is paid in full tenant to pay $25 per month and the balance to be taken from the surplus rent fund paid in; when the surplus rent fund is exhausted the tenant to pay as provided above, either $40 or $45 according to gross receipts as outlined above."

It was the intention that Beahan would borrow the money from the C. I. T., a finance company, which he was to repay at the rate of $60 a month. As the rent was only $40 per month and the payments to the finance company were to be $60 a month, Beahan was to be given credit for the $20 a month in excess of the monthly rental, on future rentals to be paid by him after the finance company was fully paid. A fair construction of the lease leaves no doubt but that the money to pay for the improvements was to be paid from the rentals and it would make no dif-

ference whether the moneys were paid to the finance company or to the parties who furnished the labor and material. The lessee did pay for the furnace from the rents as they accrued, but failed to pay the lumber company, so that the sum of $1,423 remains due and unpaid. Beahan surrendered possession of the premises. The lumber company filed timely lien which it now seeks to foreclose.

There is conflicting testimony as to whether Mrs. Bennett stood by and acquiesced in the construction of the property, and whether her son Orland, who acted for her, did not actively participate in the making of the contract with the lumber company. We, however, base our opinion upon the lease itself. Under somewhat similar facts in *Hart* v. *Reid,* 243 Mich. 175, we held that a lessee in making a lease of this nature was the agent of the owner in making the contract. The court held that the instant case was more similar to that of *Merrill* v. *Brandt,* 175 Mich. 182, where a costly improvement was to be made and the lessor agreed to make an allowance of a few hundred dollars on the rent. The opinion states that the owner simply "donated" this amount.

We believe, however, that the *Hart* v. *Reid Case, supra,* is controlling, in view of the fact that in that case there was not merely a contribution toward the improvements but, as in the instant case, the entire cost was to be paid from the rentals. The improvements consisted not only of a new furnace but a 25-foot addition to the old building for the dance floor. The building undoubtedly was made far more valuable. In *Ward* v. *Nolde,* 259 Mo. 285, 301 (168 S. W. 596), the court said:

"The rule is very generally recognized and established that where the landlord binds the tenant to make substantial improvements upon the property

he thereby constitutes the latter his agent within the meaning of the mechanic's lien law, and his property is subject to the lien for labor performed and material furnished in making such improvements under the contract with the tenant.''

Again, in *Burkitt* v. *Harper,* 79 N. Y. 273, 276, where defendants owned the land which they leased to a tenant who was to erect a building thereon, the court said:

"It is thus clear that the lessors had an interest in the erection of the building, a greater interest even than the lessee. During the term of the lease the building is to them a security for the performance by the lessee of his covenants, as it is to come to them at once in case of default. It is to belong to them at the expiration of the lease, and during the term the lessee is to keep it insured for their benefit and to restore it if destroyed by fire. In addition to this the lessors lived near the premises and saw the building from time to time while plaintiff was engaged in its erection, and made no objections to the erection of the same. Under such circumstances we think the learned judge at special term was fully warranted in finding that Davis' was permitted by the owner to erect the building.''

To like effect see *Winkworth Fuel & Supply Co.* v. *Bloomsbury Corp.,* 266 Mich. 298. In *Arctic Lumber Co.* v. *Borden,* 127 C. C. A. 486 (211 Fed. 50), the court stated the rule as follows:

"It is the general rule that where a lease contains a provision authorizing the lessee to make improvements 'by deducting the cost thereof from the rent, or where part of the consideration of the lease is the making by the lessee of improvements which become a part of the realty, or that the improvements made by the lessee shall revert to the lessor,

a mechanic's lien may attach to the property for work done or materials furnished, pursuant to a contract with the lessee.' "

In *Denniston & Partridge Co.* v. *Brown,* 183 Iowa, 398 (167 N. W. 190), it was said:

"It would open the door to great fraud in practice to allow the owner of property to lease it to another, contract with the other to put on permanent improvements, improvements that are only valuable when standing upon the premises, and then say that the materialmen and laborers who placed these permanent improvements upon defendant's property have no claim against the property and must go unrewarded if the tenant is insolvent. It would be an invitation to short leases with agreements in the lease that the tenant should build permanent structures upon the premises during the term of the lease and this without jeopardizing any interest which the owner had in the property while he greatly profited from the transaction."

Also, see *Mancourt* v. *Wissel,* 83 Ind. App. 313 (146 N. E. 423); *Hall* v. *Parker,* 94 Pa. 109; *Kremer* v. *Walton,* 11 Wash. 120 (39 Pac. 374, 48 Am. St. Rep. 870).

It may be properly claimed that all these cases differ somewhat in the facts but the general rule remains the same. In the instant case, there was not merely a contribution or donation toward making the improvements, there was an agreement that the owner was to pay for the entire improvements, by the tenant's applying the rentals toward such payment. Under the facts in the case, we hold that the tenant was the agent for the owner to enter into the contract, and the owner is liable.

The decree is reversed and one may be entered ordering defendants to pay the amount due plaintiff lumber company, and in default of such payment,

ordering the sale of the premises, as provided for by statute.*   Plaintiff will recover costs of both courts.

STARR, C. J., and NORTH, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.