ROWEN & BLAIR ELECTRIC COMPANY v FLUSHING
OPERATING CORPORATION

1. MECHANICS' LIENS—PURPOSES—UNJUST ENRICHMENT—PROOF—
PREREQUISITES.

One of the purposes of the mechanics' lien law is to prevent a
property owner from being unjustly enriched, but the law does
not make proof of actual enrichment a prerequisite to obtain-
ing a lien (MCLA 570.1; MSA 26.281).

2. MECHANICS' LIENS—ENHANCEMENT—PRESUMPTIONS.

Enhancement to an owner is presumed under the mechanics' lien
law where material is actually used and work actually ren-
dered on a building.

3. MECHANICS' LIENS—ENHANCEMENT—DECISION OF OWNER—JUDG-
MENT.

Potential enhancement is a question which the owner of property
decides for himself when he authorizes the improvements
made, and he is bound by his own decision, so that it makes no
difference, so far as a lien against the premises is concerned,
whether his judgment is good or bad.

4. PRINCIPAL AND AGENT—SPECIAL AGENT—SINGLE TRANSACTION—SE-
RIES OF TRANSACTIONS—CONTINUITY OF SERVICE—SCOPE OF AU-
THORITY.

A special agent is an agent authorized to conduct a single
transaction or a series of transactions not involving continuity
of service, and he can bind an undisclosed principal only with
contracts made within the scope of his authority.

5. PRINCIPAL AND AGENT—SPECIAL AGENTS—POWER TO BIND—AU-
THORITY—EXCEPTIONS.

A special agent for an undisclosed principal has no power to bind
his principal by contracts or conveyances which he is not
authorized to make unless: (a) the agent's only departure from
his authority is (i) in not disclosing his principal, or (ii) in

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 53 Am Jur 2d, Mechanics' Liens § 114.
[4–6] 3 Am Jur 2d, Agency § 68 *et seq.*

having an improper motive, or (iii) in being negligent in determining the facts upon which his authority is based, or (iv) in making misrepresentations; or (b) the agent is given possession of goods or commercial documents with authority to deal with them.

6. MECHANICS' LIENS—CONTRACTS—AGENCY—AUTHORITY—DEPARTURE FROM AUTHORITY—LIMITATION OF RECOVERY.

A mechanics' lien is based entirely on the contract between the parties and where a contract limited a special agent's authority to contract for improvements only to a value of $45,000, and that limit was reached before the debts claimed by a plaintiff seeking a mechanics' lien arose, the plaintiff is limited to recovery from the agent and cannot assert a mechanics' lien against the property of the principal.

Appeal from Kalamazoo, Donald T. Anderson, J. Submitted October 7, 1975, at Grand Rapids. (Docket No. 22011.) Decided January 7, 1976. Leave to appeal granted, 396 Mich 853.

Complaint by Rowen & Blair Electric Company against Flushing Operating Corporation, Dutch Treat Bakers, Inc., and Sparrow Building, Inc., to foreclose a mechanics' lien. Judgment for defendants. Plaintiff appeals. Affirmed.

*Schaberg & Schaberg,* for plaintiff.

*Thomas M. Powers,* for defendant Flushing Operating Corporation.

Before: N. J. KAUFMAN, P. J., and R. B. BURNS and G. R. DENEWETH,* JJ.

N. J. KAUFMAN, J. Plaintiff appeals a decision of the Kalamazoo County Circuit Court which, following a bench trial, refused to impose a mechanics' lien on a building owned by defendant Flushing Operating Corporation (Flushing). We affirm.

The building in question was leased by Flushing

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to Dutch Treat Bakers, Inc. (Dutch Treat). Dutch Treat desired to expand its operations by acquiring the property but could not finance the acquisition. As a result, Dutch Treat entered into negotiations with Flushing which decided to purchase the building and its plot of land and lease it to Dutch Treat. Flushing leased the realty to Dutch Treat on July 2, 1969, for a term of ten years, commencing October 1, 1969. During negotiations, Flushing and Dutch Treat determined that approximately $45,000 would be needed to renovate the building to serve as a wholesale bakery. As a result, the lease contained a provision for leasehold improvements:

"The landlord has agreed to expend the sum of forty-five thousand dollars ($45,000.00) for improvements to the leased property and for replacement of fixtures as may be required. The alterations, additions and improvements as made with the subject $45,000.00 shall be described in detail by the tenant and a list thereof attached to and made a part of this lease agreement as an exhibit hereto. Any alterations, additions and improvements made, whether from the funds advanced by the landlord or paid for by the tenant, as well as any fixtures, shall immediately become the property of the landlord and at the end or other termination of this lease shall be surrendered to the landlord, with the exception that the moveable personal property and moveable trade fixtures put in by the tenant at the tenant's expense may be removed on or before the expiration or termination of this lease."

At trial, the testimony presented indicated that, at the time of signing, figures were attached to the lease estimating future repairs to be: structural, $30,000; electrical, $10,000; miscellaneous, $5,000. The list was apparently lost and could not be produced at trial.

Plaintiff, one of a number of contractors hired by Dutch Treat, pursuant to an oral agreement with Dutch Treat, began electrical work on the building early in July, 1969. A letter agreement embodying the oral terms was prepared by plaintiff and sent to Dutch Treat on October 9, 1969. It was not signed until April 6, 1970. In the meantime, Dutch Treat was making progress payments to plaintiff on a "cost-plus" basis. Dutch Treat sent plaintiff's first invoice to Flushing which issued a check for $7,040.35 payable to plaintiff and Dutch Treat. This check was endorsed by Dutch Treat and turned over to plaintiff.

This was the first time that plaintiff had any knowledge of or contact with Flushing. Plaintiff's employees noted Flushing's check but did not attempt to ascertain Flushing's position. They assumed that Dutch Treat owned the building.

On December 23, 1969, Flushing sent its last check for leasehold improvements to Dutch Treat because the $45,000 contractual limit had been reached through progress payments to plaintiff and the other contractors. At that time, Dutch Treat was behind in its rental payments, and Flushing, by applying the arrears to the rental payment account, used up the remainder of the account. Dutch Treat itself later made two $5,000 payments to plaintiff on March 30 and May 13, 1970.

On May 27, because of a growing indebtedness to plaintiff and the resultant pressure, officers of Dutch Treat signed a nine per cent demand note for $40,872.48, the amount of the debt. On May 20, plaintiff had also filed a statement of account and lien with the Register of Deeds. Both Flushing and Dutch Treat were named but no notice was served on Flushing within the 10-day period prescribed by

MCLA 570.6; MSA 26.286. Nor had plaintiff served the requisite notice of intention to claim a lien on Flushing within 90 days of the first furnishing of labor, MCLA 570.1; MSA 26.281.

Plaintiff completed work on May 13, 1971, and timely filed the requisite statement with the register of deeds to establish a mechanics' lien against the property occupied by Dutch Treat. Plaintiff claimed that $39,033.50 remained unpaid. A suit to foreclose the lien was begun on May 3, 1971. After this Court reversed a summary judgment for defendant, *Rowen & Blair Electric Co v Flushing Operating Corp,* 49 Mich App 89; 211 NW2d 527 (1973), a bench trial was held.

The trial court held that plaintiff was entitled to judgment against Dutch Treat for the full amount of the May, 1970, promissory note plus interest. However, after the suit had commenced Dutch Treat had gone bankrupt and had been liquidated. Thus, the crucial issue was the validity of plaintiff's lien against the building, still owned by Flushing. The building was then empty because several creditors had repossessed Dutch Treat's machinery.

The trial court held that the lien was valid against Flushing. It held that plaintiff's failure to give statutory notice to Flushing was not fatal because it found an agency relationship to exist between Dutch Treat and Flushing. Notice to Dutch Treat, the agent, was held to provide notice to Flushing, the undisclosed principal. *Merithew v Bennett,* 313 Mich 189, 193; 20 NW2d 860 (1945). The court also held that no apparent authority was present.

However, Flushing's liability was held to be limited to the extent of the authority given to Dutch Treat. The court held that such authority

was limited to $10,000. This was the amount allegedly specified for electrical repairs on the Flushing-Dutch Treat lease. Plaintiff had already been paid $17,040.35, an amount in excess of this limit. The court further held that plaintiff had failed to carry the burden of proof which required plaintiff to demonstrate that it was owed money for work other than the electrical job.

On appeal, plaintiff raises two claims of error: (1) that the trial court erred in holding that, because the machinery was removed from defendant's building, plaintiff's work did not benefit defendant and, thus, a lien cannot result, and (2) that the trial court erroneously used $10,000 as the limit on Flushing's liability. Defendant Flushing contends on appeal that the trial court's finding of agency was erroneous. Flushing's claim, however, was not properly raised by a cross-appeal, GCR 1963, 807.1, and we do not consider it.

The trial court stated:

"This Court finds that there has been paid to Rowen and Blair a total of $17,040.35. The burden is upon the Plaintiff in this case to establish its claim by the greater weight of the evidence. Plaintiff was unable to sort out from its accounting those items which were for electrical work, those items which were for millwright services and those items which were for the installation of equipment which has been removed and which was of *no benefit to the lessor and owner of the building."* (Emphasis supplied.)

Defendant cites *Canvasser Custom Builders, Inc v Seskin,* 38 Mich App 643; 196 NW2d 859 (1972), *lv den* 387 Mich 783 (1972), as supporting authority for the trial court's holding that enhancement must be proven. That case states that:

"A mechanic's lien * * * gives the lienor an interest,

*in rem,* in the property that he has *participated in improving to the extent of the enhancing value of his material and labor."* 38 Mich App at 647. (Emphasis supplied.)

If correct, this rule would certainly require affirmance. However, our reading of the *Canvasser* case and other relevant cases convinces us that this dictum is unsupported by any authority in this jurisdiction.

We find that, while one of the purposes of the mechanics' lien law is to prevent a property owner from being unjustly enriched, the law does not make proof of actual enrichment a prerequisite to obtaining a lien. The instant question has never been decided in this jurisdiction. An early case, *Smalley v Gearing,* 121 Mich 190; 79 NW 1114 (1899), examined the legislative motive behind the mechanics' lien law:

"The lien law was enacted for the benefit and protection of laborers and material men, and should be construed liberally.

\*     \*     \*

"The equity of a lien claim for labor or materials arises from the fact that the value of the property to which they have been applied has been increased." *Id.* at 203.

The policies of assuring payment for a laborer's work and avoiding unjust enrichment are equally important. We find that the legislative intent and judicial gloss require that, where material is actually used and work actually rendered on a building, enhancement is presumed.

In *Smalley v Gearing,* the Court applied the enhancement rule to deny a lien for materials never used on the subject property. The equities of

both statutory policies clearly dictate this result.
In *McClintic-Marshall Co v Ford Motor Co,* 254
Mich 305, 311; 236 NW 792 (1931), the Supreme
Court, in dictum, alluded to the presumption of
enhancement resulting from labor and materials
which actually enter into a structure:

> "The mechanics' lien law (3 Comp. Laws 1929,
> § 13101 *et seq.)* is framed upon the theory that those
> who perform work or furnish material *which enters
> into* and enhances the value of improvements on real
> estate are entitled to a preferred claim against and a
> lien upon the specific property *presumably bettered* by
> the performance of such labor and the furnishing of
> such materials; the security of attaching creditors and
> mortgagees being so enhanced in value thereby that
> they are not prejudiced." (Emphasis supplied.)

We cite specifically the Court's use of the phrase
"presumably bettered". We find significant the use
of the word "presumably" instead of the word
"actually" and read the phrase in its legal context.
    We note additionally that those cases using the
enhancement language of *Smalley v Gearing, su-
pra,* involved property whose value was actually
increased as a result of a mechanic's work and,
thus, the instant issue was never raised. See
*Alpena for use of Besser v Title Guaranty &
Surety Co,* 159 Mich 329; 123 NW 1126 (1909),
*Canvasser Custom Builders Inc v Seskin, supra.*
See also *Saginaw Lumber Co v Wilkinson,* 266
Mich 661, 666–667; 254 NW 240 (1934), where,
although the record was devoid of actual increase
in value, the Court presumed enhancement in
noting that "[p]laintiff's material went into the
property, *thereby adding to its value".* (Emphasis
supplied.)
    The mechanics' lien statute itself is written
broadly so as to include all possible types of work

and speaks in terms of protecting all those who perform such work. As its purpose, the act, 1891 PA 179, states:

> "to establish, protect, and enforce by lien the rights of mechanics and other persons furnishing labor or materials for the building, altering, improving, repairing, erecting or ornamenting of buildings, * * * ."

Nowhere is actual enhancement required. The statute requires only that the potential lienor "furnish any labor or materials in or for building, altering, improving, repairing, erecting, ornamenting * * * any * * * structure". MCLA 570.1; MSA 26.281. Plaintiff here has furnished labor and materials to alter, improve and repair defendant's building.

The salutary purposes of the mechanics' lien law would be defeated if a mechanic supplied materials or labor but could not obtain the lien's protection because the owner, his agent or other third party had taken action to render the work valueless. Construing the law to prevent a lien in such a case would greatly limit those whom the act was meant to protect from using the remedies provided for their protection. Even in cases where the work itself had proven faulty, rendering it worthless, the apparent remedy is recoupment not denial of a lien. *Albert Gall Co v Dowagiac Gas Co,* 160 Mich 255; 125 NW 283 (1910).

We agree with the Court in *Masterson v Roberts,* 336 Mo 158; 78 SW2d 856 (1934), which, in finding evidence of enhancement irrelevant, opined that potential enhancement

> "is a question which the owner decides for himself, when he authorizes the improvements made, and he is bound by his own decision, so that it makes no differ-

ence, so far as a lien against the premises is concerned, whether his judgment was good or bad."

A vast majority of states which have considered the instant issue have required no enhancement. *Hardwood Interior Co v Bull,* 24 Cal App 129; 140 P 702 (1914), *Chamberlain v City of Lewiston,* 23 Idaho 154; 129 P 1069 (1912), *app dismissed* 234 US 751; 34 S Ct 775; 58 L Ed 1576 (1914), *Nichols v Levy,* 55 Nev 310; 32 P2d 120 (1934), *Albuquerque Lumber Co v Montevista Co,* 39 NM 6; 38 P2d 77 (1934), *Masterson v Roberts, supra, Overhead Door Co of Illinois v Bernstein,* 285 Ill App 587; 3 NE2d 169 (1936), *McHugh Electric Co v Hessler Realty & Development Co,* 50 Del 296; 129 A2d 654 (1957), *Nolte v Smith,* 189 Cal App 2d 140; 11 Cal Rptr 261 (1961), *United Pacific Insurance Co v Martin & Luther General Contractors, Inc,* 455 P2d 664 (Wyo 1969). These cases have applied this rule where the building was not completed or was destroyed without the mechanic's fault. One jurisdiction which does require enhancement bases its decision on a statute drawn much more narrowly than ours. *Stone v Rosenfield,* 141 Conn 188; 104 A2d 545 (1954).

Although we have held that the trial court was in error in requiring enhancement, we affirm its decision because of our holding on plaintiff's second appellate issue. The trial court found an agency relationship between Flushing and Dutch Treat. It held that Dutch Treat's authority to contract with plaintiff was limited to $10,000.

In this case Dutch Treat was acting as a special agent to an undisclosed principal. A special agent is "an agent authorized to conduct a single transaction or a series of transactions not involving continuity of service". Restatement of Agency 2d, § 3, p 15. A special agent can bind an undisclosed

principal only with contracts made within the scope of his authority. Restatement of Agency 2d, § 195A, p 434. See also *Saginaw, T & H R Co v Chappell,* 56 Mich 190; 22 NW 278 (1885).

The $10,000 figure was the sum estimated by Flushing and Dutch Treat as the amount required for electrical work. We do not agree that this was the correct limitation on Dutch Treat's agency. This sum was only an estimate as to how much electrical work might be done. It was apparently appended to the contract as an exhibit pursuant to a contract clause. That clause, however, required that

"The alterations, additions and improvements *as made* with the subject $45,000 shall be described in detail by the tenant and a list thereof attached to and made a part of this lease agreement as an exhibit hereto." (Emphasis supplied.)

The $10,000 was only an estimate, not a statement of an amount actually expended or an improvement actually made.

We find, instead, that the agency was limited to an expenditure of $45,000 for all improvements, alterations and additions. This was the figure negotiated by the parties to the lease and specifically made part of the lease. Before this amount was reached plaintiff was paid with a check from Flushing. After $45,000 was expended, Dutch Treat itself paid plaintiff $10,000. A mechanics' lien is based entirely on the contract between the parties. *Sewell v Nu Markets Inc,* 353 Mich 553; 91 NW2d 861 (1958). As principal and lessor, defendant Flushing's lien liability on the contract between lessee Dutch Treat and plaintiff is limited to the portion made by Dutch Treat within the

scope of its agency. The Restatement of Agency 2d, § 195A, provides that:

"A special agent for an undisclosed principal has no power to bind his principal by contracts or conveyances which he is not authorized to make unless:

(a) the agent's only departure from his authority is

(i) in not disclosing his principal, or

(ii) in having an improper motive, or

(iii) in being negligent in determining the facts upon which his authority is based, or

(iv) in making misrepresentations; or

(b) the agent is given possession of goods or commercial documents with authority to deal with them."

In the instant case, Dutch Treat's actions do not fall within either of the exceptions. The agent's departure from authority here would have been exceeding the monetary limit of that authority and not disclosing the principal. Plaintiff cannot bind defendant Flushing beyond the authority granted by Flushing to Dutch Treat. This authority expired on December 23, 1969, when the $45,000 limit was surpassed. The debts claimed by plaintiff in the instant action arose after that date.

We recognize that this is an unfortunate case where, through no fault of its own, either the plaintiff or the defendant will be subject to a monetary loss. Because of Dutch Treat's bankruptcy, plaintiff's sole remedy has become the mechanics' lien. That lien is, however, an extraordinary remedy, one designed as an alternative to a suit for damages and one to be applied narrowly. Additionally, plaintiff had a demand note from Dutch Treat but failed to negotiate it. These facts present an apparent clash between the purposes of the mechanics' lien law and principles of agency law. This is not a case where defendant used an

agent in an attempt to circumvent the lien law. If it were, we would have no trouble applying the lien law. See *Merithew v Bennett,* 313 Mich 189; 20 NW2d 860 (1945).

Because the lien is completely dependent on the underlying contract, plaintiff unfortunately cannot recover from defendant. The contract was a cost-plus agreement, one to be paid as the work progressed. It was not a lump sum payment. Apparently, the other contractors were paid on a similar basis. Defendant carefully restricted Dutch Treat to $45,000 for leasehold improvements. As such, once this figure was surpassed, any liability for paying any of the contractors fell to Dutch Treat.

Affirmed. No costs, neither party having prevailed in full.