ROWEN & BLAIR ELECTRIC COMPANY v FLUSHING
OPERATING CORPORATION

Docket No. 57998. Argued January 4, 1977 (Calendar No. 5).—Decided
February 14, 1977.

Rowen & Blair Electric Company brought a complaint against
Flushing Operating Corporation, Dutch Treat Bakers, Inc., and
Sparrow Building, Inc., to foreclose a mechanic's lien on a
building. Flushing Corporation had leased the building for ten
years to Dutch Treat and agreed with Dutch Treat to spend
$45,000 on improvements, which was to include an estimated
$10,000 for electrical work. Plaintiff was hired by Dutch Treat
to do the electrical work and received partial payment by a
check drawn by Flushing Corporation payable to plaintiff and
Dutch Treat for $7,000 and by checks drawn by Dutch Treat
totaling $10,000. Plaintiff filed a statement with the register of
deeds to establish a mechanic's lien for an unpaid balance of
$39,000, but did not serve the building owner with a statement
of account or file a notice of intent to claim a lien. After suit
was commenced Dutch Treat became bankrupt and was liquida-
ted. The Kalamazoo Circuit Court, Donald T. Anderson, J.,
granted summary judgment for defendants for failure to com-
ply with the notice provisions of the mechanic's lien statute.
The Court of Appeals, Holbrook, P. J., and T. M. Burns and
Churchill, JJ., reversed and remanded for trial on the issue of
whether the lessee was acting as an agent for the building
owner in contracting the electrical work so as to excuse the
statutory notice requirements by direct dealing of the contrac-
tor with the owner (Docket No. 14751). 49 Mich App 89; 211
NW2d 527 (1973). On remand the trial court granted judgment
for defendants on the ground that Flushing's liability was
limited to the $10,000 specified for electrical repairs as the
extent of Dutch Treat's authority to contract on behalf of
Flushing. The Court of Appeals, N. J. Kaufman, P. J., and R. B.

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 53 Am Jur 2d, Mechanics' Liens §§ 131–133.

Lessee as agent of lessor within contemplation of mechanic's lien
laws. 163 ALR 992.

[3] 49 Am Jur 2d, Landlord and Tenant § 765.

Burns and Deneweth, JJ., affirmed, finding the limitation of liability was the $45,000 stated in the lease, but that the claim was for work and material after the limit had been exceeded (Docket No. 22011). Plaintiff appeals. *Held:*

1. The mechanic's lien statute allows a lien only to the extent of the interest of the owner, part owner, or lessee with whom the claimant has contracted. However, the lessor's interest may be reached where, in fact or in law, the lessee becomes the lessor's agent with authority to contract for improvements which will be of substantial benefit to the reversion.

2. An agency is not created to permit a mechanic's lien against property for work contracted by the tenant by the mere relationship of landlord and tenant; each case necessarily turns on its own facts, the primary focus being directed to whether the lessee in fact was, or in equity should be viewed as, the lessor's agent in contracting for improvements.

3. There are no circumstances evident in this record which would warrant allowing Dutch Treat to bind its alleged principal beyond the express limits to its authority. The alterations and improvements were to be of primary benefit to Dutch Treat in expanding its operations. The alterations were not of any value to the reversion because the bulk of the work performed by plaintiff was the wiring and setting up of bakery equipment, all of which has either been seized by the Internal Revenue Service or repossessed by creditors. There was no reliance by the contractor on the lessor's credit. There is no claim that the ownership of the premises was misrepresented, and at all relevant times plaintiff had constructive notice that Dutch Treat was not the owner of record.

Affirmed.

66 Mich App 480; 239 NW2d 633 (1976) affirmed.

1. MECHANICS' LIENS—LANDLORD AND TENANT—PRINCIPAL AND AGENT—IMPROVEMENTS.

The mechanic's lien statute allows a lien on property only to the extent of the interest of the owner, part owner, or lessee with whom the claimant has contracted; however, the lessor's interest may be reached where the lessee becomes the lessor's agent with authority to contract for improvements which will be of substantial benefit to the reversion (MCL 570.1; MSA 26.281).

2. MECHANICS' LIENS—LANDLORD AND TENANT—PRINCIPAL AND AGENT—IMPROVEMENTS—AUTHORITY TO CONTRACT.

An agency is not created to permit a mechanic's lien against property for work contracted by the tenant by the mere rela-

tionship of landlord and tenant; each case necessarily turns on its own facts, the primary focus being directed to whether the lessee in fact was, or in equity should be viewed as, the lessor's agent in contracting for improvements.

3. MECHANICS' LIENS—LANDLORD AND TENANT—PRINCIPAL AND AGENT—IMPROVEMENTS—AUTHORITY TO CONTRACT.

A lessee who contracted for improvements on a building cannot bind the building owner, its alleged principal, beyond the express limits to the lessee's authority contained in the lease and thus permit creation of a mechanic's lien on the reversionary interest in the property where the improvements were of primary benefit to the lessee in expanding its business and not of any value to the reversion; there was no reliance by the contractor on the lessor's credit; there was no claim that the ownership of the building was misrepresented; and at all relevant times the contractor had constructive notice that the lessee was not the owner of record.

*Schaberg & Schaberg* for plaintiff.

*Thomas M. Powers* for defendant Flushing Operating Corporation.

FITZGERALD, J. The issue on appeal is whether a lessee acted as its lessor's agent in contracting for certain improvements made to the leased premises. The agency theory is advanced by Plaintiff Rowen & Blair Electric Co. which, although contracting directly with the lessee to do electrical work, seeks to impress the lessor's interest with a mechanic's lien. The asserted agency relationship is also said to result in direct dealing by the contractor with the owner, so as to excuse the statutory requirements regarding service of the notice of intention to claim a lien,[1] and service of a copy of the recorded statement of lien.[2] The Court of Appeals at 66 Mich App 480; 239 NW2d 633 (1976), held that, on the facts of this case, plaintiff

---

[1] MCLA 570.1; MSA 26.281.

[2] MCLA 570.6; MSA 26.286

could not bind the lessor beyond the monetary limit placed on the lessee's authority to expend on the lessor's behalf for improvements to the leasehold.

I

The evidence indicates that Dutch Treat Bakers, Inc., desired to expand its bakery operation by acquiring the subject land and building in Kalamazoo County, but could not finance the acquisition. As a result, Dutch Treat entered into negotiations with defendant Flushing Operating Corporation which decided to purchase the property and lease it to Dutch Treat. In June of 1969, Flushing purchased the property on contract from a subsidiary of Gulf and Western Corporation. The contract was not recorded. On September 30, 1969, Flushing took a warranty deed to the premises from Gulf and Western and recorded the deed on October 23, 1969.

On July 2, 1969, Flushing leased the building to Dutch Treat for a ten-year term, commencing October 1, 1969. The lease contained the following provision regarding improvements:

"The landlord has agreed to expend the sum of forty-five thousand dollars ($45,000.00) for improvements to the leased property and for replacement of fixtures as may be required. The alterations, additions and improvements as made with the subject $45,000.00 shall be described in detail by the tenant and a list thereof attached to and made a part of this lease agreement as an exhibit hereto. Any alterations, additions and improvements made, whether from the funds advanced by the landlord or paid for by the tenant, as well as any fixtures, shall immediately become the property of the landlord and at the end or other termination of this lease shall be surrendered to the landlord, with the

exception that the moveable personal property and moveable trade fixtures put in by the tenant at the tenant's expense may be removed on or before the expiration or termination of this lease."

The alterations referred to were those necessary to adapt the premises for use as a wholesale bakery.

The trial testimony indicates that, at the time of the execution of the lease, figures were attached to the lease estimating repairs to be: structural, $30,-000; electrical, $10,000; miscellaneous, $5,000. This list of estimates was apparently lost and could not be produced at trial. The detailed list of alterations, additions and improvements was never provided to Flushing by Dutch Treat as was required by the terms of the lease, nor was Flushing otherwise made aware in advance of the exact nature and character of the work to be done on the premises by the various contractors.

In July of 1969, plaintiff orally agreed with Dutch Treat to furnish labor and materials in connection with electrical and millwright work to be done in the installation of trade fixtures and equipment on the premises. The agreement called for payments on a cost-plus basis. In the early part of October 1969, plaintiff started work on the premises and confirmed in writing the verbal agreement in a letter memorandum to Dutch Treat dated October 9, 1969. The memorandum was not signed by Dutch Treat until April 6, 1970, after nearly all the work had been done and after the $45,000 limit contained in the lease had been exceeded by Dutch Treat. The testimony indicates that Dutch Treat finally signed the memorandum in response to pressure from plaintiff which was concerned that accounts receivable were getting too high. Dutch Treat did not sign as agent, nor does the name of Flushing appear on the memo-

randum. As will be seen, *infra,* plaintiff learned of the existence of Flushing in late November 1969, but made no attempt to discover the exact relationship between Flushing and Dutch Treat. The record further indicates that plaintiff did not rely on the credit of anyone other than Dutch Treat. Plaintiff's president testified that plaintiff had done much work for Dutch Treat in the past and had always been paid.

On or about November 1, 1969, plaintiff submitted two statements to Dutch Treat for work done during October. These were the first bills submitted by plaintiff for work done on the premises, and totaled $7,040.35. These invoices were forwarded by Dutch Treat to Flushing's office in New York for payment out of the $45,000 improvement account. On November 17, Flushing made out its check in the amount of the invoice payable jointly to Dutch Treat and plaintiff. The check was sent to Dutch Treat which endorsed it and forwarded it to plaintiff.

No more of plaintiff's invoices were presented by Dutch Treat to Flushing for payment. Neither plaintiff nor any other contractor forwarded any statements directly to Flushing. Although the source of the November 17 check was noted and the check was photocopied by plaintiff, no inquiries were made by plaintiff to either Dutch Treat or Flushing as to their relationship.

In late December 1969, Flushing issued its last check out of the $45,000 repair account, payable jointly to Dutch Treat and another contractor. At this time, Flushing's president contacted Dutch Treat's president and advised him that the account had been exceeded, except for approximately $1,-245 which would be applied to rent in arrears. Consequently, Dutch Treat was informed that no further bills would be paid by Flushing.

Although plaintiff continued to send monthly statements to Dutch Treat after November 1969, it received no further payment until March 30, 1970, when Dutch Treat paid $5,000 by its own check, and thereafter until May 13, when Dutch Treat made an additional $5,000 payment by its own check. One week later, on May 20, 1970, plaintiff recorded its statement of account and lien with the Kalamazoo County Register of Deeds naming both Flushing and Dutch Treat as owners. On May 27, 1970, at the insistence of plaintiff, the officers of Dutch Treat executed and delivered to plaintiff a corporate note payable on demand for the $40,-872 balance owing to plaintiff. No attempt was made by plaintiff to have Flushing sign on this note.

Although it appears that record title to the property was in a subsidiary of Gulf and Western Corporation at the time plaintiff commenced performance, no notice of intent to claim a lien or copy of recorded statement of lien was ever served on that entity. Neither was a copy of the statement ever served on Flushing, although its title had been of record for some seven months when plaintiff completed its performance.

II

Plaintiff filed its complaint to foreclose the lien on May 3, 1971. The trial court granted summary judgment for the defendant on the grounds that there had been no direct dealing between plaintiff and Flushing and that failure to comply with the notice and service provisions was therefore fatal to plaintiff's claim. This summary judgment was reversed by the Court of Appeals at 49 Mich App 89; 211 NW2d 527 (1973), as being inappropriate on

the factual record then existing, and the matter was remanded for trial. On remand, the trial court found that an agency relationship did exist between Dutch Treat and Flushing, and that plaintiff was dealing directly with the owner through its agent. But the trial court held that the agent's authority to bind Flushing for the cost of electrical improvements was limited by the $10,000 estimate that Dutch Treat had made to Flushing regarding those improvements. Judgment was entered in favor of plaintiff and against Dutch Treat in the amount of $40,872, but this was of little solace to plaintiff since Dutch Treat is totally insolvent. Plaintiff appealed the denial of lien foreclosure to the Court of Appeals, which agreed with the trial court that Dutch Treat could not bind Flushing beyond the monetary limit placed on its authority to expend on Flushing's behalf for improvements, although it found the appropriate limitation to be the $45,000 amount set forth in the lease rather than the $10,000 internal estimate regarding electrical work. Since plaintiff's claim was for work done and material supplied after the $45,000 limit had been exceeded, the Court of Appeals affirmed the trial court's judgment denying a lien.

## III

The statute allows a lien only to the extent of the interest of the owner, part owner, or lessee with whom the claimant has contracted.[3] However, the lessor's interest has been reached where, in fact or in law, the lessee becomes the lessor's agent with authority to contract for improvements which will be of substantial benefit to the rever-

[3] *Sewell v Nu Markets, Inc,* 353 Mich 553; 91 NW2d 861 (1958).

sion.[4] The use of the agency theory is based upon the policy consideration that:

" 'It would open the door to great fraud in practice to allow the owner of property to lease it to another, contract with the other to put on permanent improvements, improvements that are only valuable when standing upon the premises, and then say that the materialmen and laborers who placed these permanent improvements upon defendant's property have no claim against the property and must go unrewarded if the tenant is insolvent. It would be an invitation to short leases with agreements in the lease that the tenant should build permanent structures upon the premises during the term of the lease and this without jeopardizing any interest which the owner had in the property, while he greatly profited from the transaction.' " *Merithew v Bennett,* 313 Mich 189, 194; 20 NW2d 860 (1945), quoting from *Denniston & Partridge Co v Brown,* 183 Iowa 398, 402; 167 NW 190, 191 (1918).

However, an agency is not created by the mere relationship of landlord and tenant.[5] The possibility of the owner's unjust enrichment through circumvention of the lien statute must exist. Each case necessarily turns on its own facts, the court's primary focus being directed to whether the lessee in fact was, or in equity should be viewed as, the lessor's agent in contracting for improvements.

Some courts have held that the test of agency *vel non* is whether, under the terms of the lease, the lessee has a mere privilege or is obligated to make improvements.[6] In *Hart v Reid, supra,* the

---

[4] *See Hart v Reid,* 243 Mich 175; 219 NW 692; 220 NW 717 (1928), and *Merithew v Bennett,* 313 Mich 189; 20 NW2d 860; 163 ALR 988 (1945). *Cf. Sewell v Nu Markets, supra.*

[5] Anno: *Lessee as Agent of Lessor Within Contemplation of Mechanic's Lien Laws,* 163 ALR 992.

[6] *See* Anno: *Mechanic's Lien—Lessee's Improvements, supra,* at 994–1000.

lessee was required as a condition of the lease to erect an entirely new building at the cost of $500,-000. The building, of course, was of substantial benefit to the owner's reversion. In *Merithew v Bennett, supra,* the 25-foot addition and installation of the air conditioning unit was mandatory, and it is clear that these improvements were of substantial benefit to the lessor because she had agreed to pay the entire cost of them.

If improvements are merely permitted, it has been held that there is no agency,[7] even where the lessee is granted reduced rents if he chooses to make improvements.[8] Other courts have emphasized the presence or absence of reliance by the contractor on the lessor's credit.[9]

## IV

There are a number of factors which distinguish this case from those cases hereinbefore cited in which an agency relationship was found to exist between the lessor and the lessee. In the instant case, the parties to the lease do not appear to have contemplated the building of a permanent structure upon the premises. Instead, Flushing and Dutch Treat agreed that, at the discretion of Dutch Treat, certain alterations and improvements would be made on a vacant building owned by Flushing in order to make the leased premises suitable for the operation of a wholesale bakery by Dutch Treat.

While it is impossible to determine from the

---

[7] *Sewell v Nu Markets, supra. See, also, Miles v Bunn,* 173 Wash 303; 22 P2d 985 (1933).

[8] *Seattle Ass'n of Credit Men v Daniels,* 15 Wash 2d 393; 130 P2d 892 (1942).

[9] *Platner Lumber Co v Krug Park Amusement Co,* 131 Neb 831; 270 NW 473 (1936). *Delany & Co v Duvoli,* 278 NY 328; 16 NE2d 354 (1938), *reh den* 278 NY 715; 17 NE2d 136 (1938).

record the extent to which Flushing expected the value of its reversion to be enhanced by the improvements and the degree to which Flushing was merely making the lease agreement more attractive to Dutch Treat by agreeing to expend $45,000 for improvements and alterations "as may be required", it is clear that the alterations and improvements were to be of primary benefit to Dutch Treat. Indeed, Dutch Treat was not obligated by Flushing to make these improvements; they were essential to Dutch Treat's business operations.

It is equally clear in retrospect that the alterations were not in this case of any value to the reversion. The bulk of the work performed by plaintiff was the wiring and setting up of bakery equipment, all of which has either been seized by the Internal Revenue Service or repossessed by various secured parties. Flushing was left with nothing more than it had acquired by deed, *i.e.,* a plot of land upon which sat a vacant building. Plaintiff's president conceded at trial that prospective purchasers or tenants would not pay more for the building because of work done on it by plaintiff.

Furthermore, in comparing this case with those cited cases in which an agency relationship was found to exist between the lessor and the lessee, it is important to bear in mind that in the present case there was no reliance by the contractor on the lessor's credit. As plaintiff performed on the contract, it never relied on the credit of anyone other than Dutch Treat. Although it noted that Flushing was the source of payment on its first invoice, plaintiff made no inquiries to anyone at the time regarding Flushing's status. Nor did plaintiff ever attempt to bill Flushing directly when thereafter its invoices went unpaid by Dutch

Treat, even though Flushing's interest in the property was of record before plaintiff received its first payment. There is no claim that Dutch Treat or anyone else misrepresented the ownership of the subject premises. Plaintiff had at all relevant times constructive notice that Dutch Treat was not the owner of record. Plaintiff's argument that Flushing was under an obligation to provide notice of any limitation on the lessee's authority to bind the property for improvements is inconsistent with the rule that, absent other considerations, mere possession with authority to alter or improve is by itself insufficient to create an agency by which the lessor's interest can be bound.

However, it is not necessary to the proper disposition of this case that we pass upon the rulings of the lower courts that an agency relationship was created by the terms of the lease. We need hold merely that there are no circumstances evident in this record which would warrant allowing Dutch Treat to bind its alleged principal beyond the express limits to its authority.

The judgment of the Court of Appeals is affirmed, with costs to defendant Flushing.

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, RYAN, and BLAIR MOODY, JR., JJ., concurred with FITZGERALD, J.