J & I SERVICE STATION, INC v WASH WAGON OF MICHIGAN, INC

Docket No. 58800. Submitted August 2, 1982, at Detroit.—Decided October 18, 1982.

The J & I Service Station, Inc., owns a truck repair facility in Detroit. In 1978, J & I leased part of its property to Wash Wagon of Michigan, Inc., to operate a truck-washing facility. It was agreed that if Wash Wagon of Michigan was unable to obtain the necessary building permits within 90 days, Wash Wagon of Michigan could terminate the lease. Thereafter, Wash Wagon of Colorado contracted with Metro Construction Systems, Inc., to convert J & I's building to a wash facility. Metro performed the work and was paid in part by Wash Wagon of Michigan. Wash Wagon of Colorado then contracted with Metro for more improvements. That bill was not paid. After the sole payment, Metro gave J & I a partial waiver of a lien for the amount paid. Metro did not notify J & I, however, that it intended to claim a mechanics' lien on J & I's property for building the truck wash. Later, Metro sent J & I a statement of account and lien. That statement was recorded with the register of deeds. Wash Wagon of Michigan's rent went unpaid. J & I brought suit in Wayne Circuit Court against Wash Wagon of Michigan to collect the rent and against Metro to quiet title and to have the lien declared invalid as a matter of law. Metro filed a counterclaim against J & I to foreclose its alleged lien, a cross-claim against Wash Wagon of Michigan and a third-party complaint against Wash Wagon of Colorado to recover sums due under the construction contracts. The court, Robert J. Colombo, J., granted summary judgment to J & I. Metro appeals alleging that providing Wash Wagon of Michigan notice of its intent to claim a lien was sufficient to provide J & I with notice because Wash Wagon of Michigan was an agent of J & I and that the trial court erred in holding that a

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur 2d, Mechanics' Liens §§ 60, 117.
[2] 53 Am Jur 2d, Mechanics' Liens §§ 23, 24.
Mechanics' lien for work on or material for separate buildings of one owner. 15 ALR3d 73.

lienor must strictly comply with the notice requirements of the mechanics' lien statute. *Held:*

1. A landlord may be bound by a lien for a tenant's improvements of the premises if the improvements were required by the lease. Here, Wash Wagon of Michigan was not required to make improvements. If the improvements could not have been made, Wash Wagon of Michigan, not J & I, could have terminated the lease. Thus, Metro's contract with Wash Wagon of Michigan was not with Wash Wagon of Michigan as an agent for J & I. The trial court did not err in ruling such, as a matter of law. Metro's notifying Wash Wagon of Michigan of its intent to claim a lien should not constitute proper notice to J & I.

2. The circuit court properly found that Metro did not strictly comply with the requirements of the mechanics' lien statute when it did not send notice of its intention to claim a lien to J & I. J & I was therefore entitled to summary judgment.

Affirmed.

1. LANDLORD AND TENANT — MECHANICS' LIENS — IMPROVEMENTS.

A landlord may be bound by a lien for a tenant's improvements if the improvements are required by the lease; by requiring the lessee to make the improvements the lessor has appointed the lessee an agent; however, because the mechanics' lien statute is based on contractual relationships, a landlord who permits but does not require improvements has not created a principal-agent relationship with the tenant and notice of a mechanics' lien given to the tenant should not constitute notice to the landlord (MCL 570.1; MSA 26.281).

2. MECHANICS' LIENS — STRICT CONSTRUCTION.

The mechanics' lien statute must be strictly construed to the point when the lien attaches; "strict" construction, not "substantial compliance" is the rule of construction concerning the question of whether or not a lien attaches; after the lien attaches, because of the statute's remedial character, a liberal construction may be indulged (MCL 570.1; MSA 26.281).

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy* (by *C. F. Boyle, Jr.*), for J & I Service.

*Schier & Deneweth, P.C.* (by *Carl F. Schier*), for Metro.

Before: N. J. Kaufman, P.J., and Wahls and M. E. Clements,* JJ.

N. J. Kaufman, P.J. Plaintiff J & I Service Station, Inc. (J & I), owns a truck repair facility in Detroit. In 1978, J & I leased part of its property to defendant Wash Wagon of Michigan, Inc., to operate a truck washing facility. It was agreed that if Wash Wagon of Michigan was unable to obtain the necessary building permits within 90 days, the lessee could terminate the lease.[1] Thus, upon failure of a condition subsequent, Wash Wagon of Michigan had the option of continuing the lease or terminating it.

Third-party defendant Wash Wagon of Colorado[2] then contracted with defendant Metro Construc-

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The lease provided:

"Premises; Contingency. The within Lease is subject to Lessee's obtaining from the City of Detroit and/or Wayne County, Michigan the authority and necessary permits to build and erect a truck interior wash facility and use the Demised Premises as a truck interior and truck exterior wash facility, such contingency to continue for a period of ninety (90) days after the date hereof. Said facility is to be in accordance with the plans and specifications attached hereto as Exhibit A, which plans are hereby approved by Lessor.

"Lessee will commence construction of such truck interior wash facility as soon as is reasonably possible after the aforementioned approvals and permits are obtained, and will complete such construction within ninety (90) days thereafter.

"In the event the lessee is unable to obtain said approvals and permits within such period, Lessee may either waive this contingency or declare the Lease of no effect. Lessor agrees to cooperate fully with Lessee in an effort to obtain said approvals and permits. During such 90-day period, Lessor agrees not to enter into any other leases or agreements relating to such property, and any negotiations which Lessor may have with third parties shall be subject to Lessee's rights under this Lease. Subject to the above Contingency, Lessor hereby leases to Lessee, for the above Term, the Demised Premises, together with all buildings and improvements now and hereafter erected thereon, including but not limited to the following items: all heating, ventilation, utility and electrical equipment and appliances; the truck exterior wash facility and its controls; and all improvements and other equipment on the Demised Premises."

[2] The relationship between the Colorado company and Wash Wagon

tion Systems, Inc. (Metro), to convert J & I's building to a wash facility. Metro performed work totalling $23,749. Wash Wagon of Michigan paid $17,749, leaving a balance due of $6,000. Wash Wagon of Colorado then contracted with Metro for more improvements totalling $15,366.76. This bill was not paid.

After the sole payment, Metro gave J & I a waiver of lien for the amount paid. Metro did not, however, notify J & I that it intended to claim a mechanics' lien on J & I's property for building the truck wash. Later, Metro sent J & I a statement of account and lien; this statement was recorded with the register of deeds.

Wash Wagon of Michigan's rent went unpaid and J & I sued Wash Wagon of Michigan to collect the rent. A default judgment was entered. J & I also sued Metro to quiet title. J & I moved for summary judgment. From the Wayne County Circuit Court's grant of summary judgment to J & I, Metro appeals. We affirm.

Metro's claims on appeal can be summarized into two issues. First, Metro claims that providing Wash Wagon of Michigan notice of its intent to claim a lien was sufficient to provide J & I with notice.[3] Metro claims that the lease *required* Wash

---

of Michigan is uncertain as this case was decided on the pleadings. We will assume, *arguendo,* that the two companies are related. This is supported by the facts: The Colorado company contracted for improvements for the Michigan company's benefit, and the Michigan company paid part of the Colorado company's contractual obligations.

For simplicity, the two companies will often be called "Wash Wagon" collectively in this opinion.

[3] MCL 570.1; MSA 26.281 required:

"any person, firm or corporation furnishing materials or performing labor of any kind entering into the construction of any such building * * * shall within 90 days after furnishing the first of such material or performing the first of such labor * * * serve on the owner, part owner or lessee of the premises, or his agent * * * notice * * * which notice shall notify such owner * * * that such person * * * will claim a lien upon such premises for any amounts unpaid * * *."

Wagon of Michigan to build a truck wash and that Wash Wagon of Michigan was therefore an agent of J & I. This contention is without merit. It is true that a landlord may be bound by a lien for a tenant's improvements if the improvements are required by the lease. *Rowen & Blair Electric Co v Flushing Operating Corp,* 399 Mich 593; 250 NW2d 481 (1977). This is because Michigan's mechanics' lien act allows a lien "to the extent of the interest of the owner, part owner, or lessee with whom the claimant [lienor] has contracted". *Rowen & Blair, supra,* p 600. By requiring the lessee to make the improvements, the lessor has appointed the lessee as an agent. *Rowen & Blair, supra,* p 600-601. But because the mechanics' lien statute is based on contractual relationships, a landlord who permits but does not require improvements has not created a principal-agent relationship with the tenant. *Sewell v Nu Markets, Inc,* 353 Mich 553, 558-559; 91 NW2d 861 (1958).

Here, Wash Wagon was not required by J & I to make improvements. If the improvements could not be made, Wash Wagon, and not J & I, could terminate the contract. Thus, Metro's contract with Wash Wagon was not with Wash Wagon as an agent for J & I. The trial court did not err in ruling this as a matter of law.

Metro's second claim is that the trial court erred in holding that a lienor must strictly comply with the notice requirements of the mechanics' lien act. Sending the statement of account and lien, Metro argues, was substantial compliance with the statute's required notice of intention to claim a lien. J & I properly argues that substantial compliance is not enough. "The statute, being in derogation of

The lien act was amended by 1980 PA 497, effective January 1, 1982. See MCL 570.1109; MSA 26.316(109).

common law, must be strictly construed to the point the lien attaches but, thereafter, because of its remedial character, a liberal construction may be indulged." *Renshaw v Samuels,* 117 Mich App 649; 324 NW2d 117 (1982); *Vorrath v Garrelts,* 35 Mich App 463, 466; 192 NW2d 547 (1971). The circuit court properly found that Metro did not strictly comply with the requirements of the statute when it did not send notice of intention to claim a lien to J & I.[4] Plaintiff J & I was therefore entitled to summary judgment. The decision of the circuit court is affirmed.

Affirmed.

---

[4] Notice of intention to claim a lien is unnecessary when the proposed lienor deals directly with the property owner. *Burton Drywall, Inc v Kaufman,* 402 Mich 366; 263 NW2d 249 (1978). Metro did not deal directly with J & I. It contracted with Wash Wagon of Colorado and was paid by Wash Wagon of Michigan. As discussed earlier, Wash Wagon was not J & I's agent. Metro's direct dealings with Wash Wagon therefore did not constitute direct dealing with J & I.

We have reviewed the lower court record and find no allegations of facts indicating direct dealing. Metro's attempt to submit to this Court an affidavit not before the circuit court is improper. GCR 1963, 811. This affidavit was, or course, ignored by this Court.