AFP SPECIALTIES, INC v VEREYKEN

Docket Nos. 306215 and 307540. Submitted October 3, 2013, at Petoskey. Decided January 2, 2014, at 9:00 a.m.

In Docket No. 306215, plaintiff AFP Specialties, Inc., brought an action in the Kalkaska Circuit Court against Greg Vereyken, Northtowne Development Company, and various lienholders of the property at issue, after Vereyken failed to pay for a fire suppression system he had hired AFP to install in a building he was purchasing from Northtowne on a land contract. Vereyken had the fire suppression system installed in order to meet the code requirements for converting the building into a restaurant, but after he did so he was unable to pay the balance of the land contract, and Northtowne brought a successful action to forfeit the land contract and obtain a judgment of possession. AFP sought a money judgment for breach of contract, to foreclose AFP's lien under the Construction Lien Act (CLA), MCL 570.1101 et seq., and to determine AFP's lien superior in interest to those of the lienholding defendants. One of these defendants, AFP subcontractor Etna Supply Company, brought a counterclaim against AFP, seeking payment for the materials it had supplied for the fire suppression system plus a time-price differential. Etna, AFP, and Northtowne moved for summary disposition. After initially ruling that AFP had at least a valid construction lien on the fire suppression system itself, the court, Janet M. Allen, J., ultimately ruled that AFP's construction lien attached to Northtowne's entire interest in the property under the CLA both on a theory of implied agency and because the land contract required Vereyken to keep the property in accordance with government regulations. The court also granted partial summary disposition to Etna, ruling that AFP was liable to Etna for $8,361.58 plus costs and judgment interest and granting Etna a foreclosure judgment against Vereyken in that amount, but that whether AFP was liable to Etna for Etna's claimed time-price differential was a question of fact. After a bench trial, the court ruled that Etna was entitled to the time-price differential amount it sought. The court entered monetary judgments for AFP against Vereyken and for Etna against AFP, and granted construction lien judgments for AFP and Etna against Vereyken and Northtowne. Northtowne appealed, and a cross-appeal by Etna was dismissed by stipulation.

In Docket No. 307540, AFP appealed the trial court's award of reasonable attorney fees to Etna under MCR 2.405(A)(6) as a sanction for AFP's having rejected Etna's offer of judgment. The appeals were consolidated.

The Court of Appeals *held*:

1. The trial court erred by ruling as a matter of law that Vereyken was the implied agent of Northtowne when he hired AFP to install the fire suppression system. Resolution of this issue did not require interpretation of the CLA because the existence of an implied agency is a factual question governed by the common law. The facts and circumstances giving rise to an implied agency must be known to and acquiesced in by the alleged principal before the action of the alleged agent may bind the alleged principal, and the implied agency must be based on facts for which the principal is responsible. Without other considerations, mere possession with authority to alter or improve is by itself insufficient to create an agency by which the lessor's interest can be bound. In this case, because Northtowne had no control over what improvements Vereyken contracted to have made to the property, no implied agency arose. Further, Northtowne had no duty to inform AFP of Vereyken's financial health or business prospects or to initiate land contract forfeiture proceedings at the earliest possible time.

2. The trial court's consideration of whether Vereyken was required to install the fire suppression system pursuant to the land contract provision obligating him to keep the premises in accordance with governmental regulations was not a procedural error and did not deny Northtowne due process of law. However, the trial court erred by concluding that this provision did require the installation of the system, given that the government regulation at issue applied only because Vereyken chose to operate the building as a restaurant.

3. The trial court did not clearly err by determining that the attorney fees it awarded Etna were necessitated by AFP's rejection of Etna's offer of judgment and did not abuse its discretion by choosing not to award them under the interests-of-justice exception of MCR 2.405(A)(6).

Docket No. 306215 reversed and remanded for modification of the judgment; Docket No. 307540 affirmed.

STATUTES — CONSTRUCTION LIEN ACT — IMPLIED AGENCY.

Whether a land contract vendee has become the implied agent of the land contract vendor when entering into contracts for improvements to the property is a question of fact governed by the

common law rather than a question of law requiring interpretation of the Construction Lien Act, MCL 570.1101 *et seq.*

*Rex O. Graff, Jr.*, for AFP Specialties, Inc.

*Mark A. Hullman* for Northtowne Development Company.

*Rhoades McKee PC* (by *Gregory G. Timmer*) for Etna Supply Company.

Before: RIORDAN, P.J., and MARKEY and K. F. KELLY, JJ.

MARKEY, J. In Docket No. 306215, defendant Northtowne Development Company appeals by right the trial court's August 29, 2011 judgment granting plaintiff AFP Specialties, Inc., a construction lien foreclosure judgment against the interest of Northtowne and also granting defendant/cross-plaintiff Etna Supply Company a construction lien foreclosure judgment against the interest of Northtowne. For the reasons discussed herein, we hold that the trial court erred by finding that defendant Gregory Vereyken was the implied agent of Northtowne when Vereyken "contracted for the improvement to the real property." MCL 570.1107(1). The trial court also erred by ruling that the land contract between Northtowne and Vereyken "required the improvement." *Id.* Therefore, we reverse in Docket No. 306215 and remand for modification of the judgment.

Docket No. 307540 involves an attorney-fee claim by Etna, one of AFP's subcontractors. Etna filed a counterclaim against AFP for its contract price plus a time-price differential. AFP disputed only the added amount for the time-price differential. After Etna prevailed at trial and further hearings were held, the trial court awarded it reasonable attorney fees as an offer-of-judgment sanction. MCR 2.405. We conclude that the

trial court did not clearly err by finding that the attorney fees it assessed against AFP were necessitated by AFP's rejection of Etna's offer of judgment. MCR 2.405(A)(6). Furthermore, AFP has not established that the trial court abused its discretion by declining to invoke the "interests of justice" exception of MCR 2.405(D)(3). Therefore, we affirm in Docket No. 307540.

## I. DOCKET NO. 306215

### A. FACTUAL BACKGROUND

Vereyken entered into a land contract on October 12, 2006, to purchase property Northtowne owned in Kalkaska County that included a vacant building that had formerly been used as a hardware store. Vereyken intended to convert the building into a restaurant. The terms of sale were payment of $360,000, with a $36,000 down payment, monthly installments of $2,610.12, and a balloon payment for the balance on November 12, 2008. Although the principals of Northtowne knew that Vereyken intended to operate a restaurant, the land contract did not require the property to be used for that purpose.

On April 10, 2007, Vereyken contracted with AFP to install a fire suppression system in the building. Michigan's construction code requires that a fire suppression system be installed if a building is to be used as a restaurant. Vereyken hoped to open his restaurant for business by the summer of 2007, but AFP did not begin installing the fire suppression system until June 29, 2007. By September 12, 2007, the work was sufficiently completed for Kalkaska County to issue a temporary certificate of occupancy. Between September 12, 2007, and November 2, 2007, when AFP replaced a part in the system, AFP did not provide any labor or materials for

the improvement of the property. After AFP replaced the part, Kalkaska County determined that the system did not meet the construction code's requirements and revoked the temporary certificate of occupancy. This forced the restaurant to close from mid-November 2007 until June 2008 and resulted in Vereyken's missing payments on the land contract during the closure.

Vereyken also suffered additional financial setbacks when in the same month that he reopened the Kalkaska restaurant, another restaurant he owned, in Bellaire, burned. A dispute with his insurance company contributed to Vereyken's being unable to refinance the Kalkaska restaurant when the balloon payment came due in November 2008. Northtowne agreed to extend the due date for the land contract balance for an additional year, but Vereyken was still unable to pay the balance by the extended maturity date. Northtowne brought an action to forfeit the land contract and obtained a judgment of possession on November 9, 2009.

When Vereyken failed to pay AFP as required, AFP filed a complaint against him for breaching their contract. AFP sought a money judgment and to foreclose AFP's construction lien on the property. On September 10, 2009, AFP obtained partial summary disposition against Vereyken for $54,650.95, which included $41,180 for breach of contract and attorney fees and costs of $11,582.82 through July 14, 2009.

AFP sought to foreclose its construction lien on the property and alleged that an implied agency existed between Vereyken and Northtowne as the fee owner and land contract vendor. Northtowne denied that Vereyken was acting as its agent when he contracted for the installation of a fire suppression system in the building. After discovery, AFP and Northtowne both

moved for summary disposition. AFP contended that an implied agency existed between Vereyken and Northtowne because Northtowne had approved of, or at least tacitly permitted the construction improvements to continue, thus enhancing the value of the property, while Vereyken was in default on his land contract obligations. Northtowne contended that indicia of an implied agency were not present and that no implied agency arose between it and Vereyken. Also, Northtowne argued that Vereyken was current in his land contract obligations when he contracted with AFP and that *Norcross Co v Turner-Fisher Assoc*, 165 Mich App 170; 418 NW2d 418 (1987), on which AFP relied, was distinguishable.

In an opinion and order, the trial court concluded that AFP's construction lien attached to Northtowne's entire interest in the subject property because Northtowne both contracted for and required the improvement for purposes of the Construction Lien Act (CLA), MCL 570.1101 *et seq.* As to implied agency, the trial court reasoned that holding a fee owner responsible for improvements that its implied agent contracted for is consistent with construing the CLA liberally. See MCL 570.1302(1); *Norcross*, 165 Mich App at 178-179. The court found that Northtowne was aware of and acquiesced in Vereyken's making the improvements while in default on the land contract. The court further reasoned that a contractor had "no way of knowing when a vendee is in default" and should not have "[a] duty to investigate." Instead, the trial court believed that "the burden [should be placed] on the titleholder (who is in the best position to determine default and who stands to benefit from any improvement) to either limit or cease the improvements or expressly disclaim or restrict a potential agency relationship . . . ." The trial court concluded that "Northtowne's failure to limit or cease

the improvements being made on its property, despite Vereyken's constant state of default, created an implied agency relationship."

The trial court also concluded that Northtowne's land contract with Vereyken required the installation of the fire suppression system. The court observed that "[t]he relevant provision of the land contract provides that the purchaser (i.e. Vereyken) agrees '[t]o keep the permission[1] [sic] accordance with all police, sanitary and other regulations imposed by any governmental authority.' " On the basis of this provision, the court ruled that because the building was to be used as a restaurant and the construction code required that a restaurant be equipped with a fire suppression system, "the land contract required that the building be improved with a fire suppression system, [and] AFP's lien attaches to Northtowne's interest pursuant to MCL 570.1107(1)."

### B. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *DLF Trucking Inc v Bach*, 268 Mich App 306, 309; 707 NW2d 606 (2005). We also review de novo the proper interpretation of a statute as a question of law. *Jeddo Drywall, Inc v Cambridge Investment Group, Inc*, 293 Mich App 446, 451; 810 NW2d 633 (2011). The trial court rendered its ruling in this case under MCR 2.116(C)(10), which tests the factual sufficiency of a party's claim. *C D Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 407; 834 NW2d 878 (2013). The trial court must consider all substantively admissible evidence submitted by the

---

[1] All parties agree that "permission" is a typographical error that should read "premises in . . . ."

parties in the light most favorable to the nonmoving party. MCR 2.116(G)(6); *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). When the submitted evidence fails to establish a genuine issue regarding any material fact, and the undisputed facts establish that the moving party is entitled to judgment as a matter of law, summary disposition is appropriately granted. *Id.*; MCR 2.116(C)(10), (G)(4). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue on which reasonable minds could differ." *C D Barnes Assoc*, 300 Mich App at 407.

This case also presents questions regarding the interpretation of the court rules, which are also reviewed de novo. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). The principles of statutory construction apply when interpreting a Michigan court rule. *Id.* Furthermore, "the proper interpretation of a contract is also a question of law that we review de novo." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). Last, whether a party has been denied due process of law presents a legal question that is reviewed de novo. *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005).

### C. DISCUSSION

#### 1. DID AN IMPLIED AGENCY EXIST?

The trial court erred by ruling that the undisputed facts presented on the parties' motions for summary disposition under MCR 2.116(C)(10) established as a matter of law that Vereyken was acting as Northtowne's implied agent when Vereyken contracted with AFP for the installation of a fire suppression system in a building of which Vereyken was the equitable owner

as the land contract vendee. Consequently, the trial court erred by ruling as a matter of law that AFP's construction lien attached to Northtowne's entire interest in the property because Northtowne was "the owner . . . who contracted for the improvement to the real property . . . ." MCL 570.1107(1).

Initially, we conclude that the trial court erred by applying the liberal rule of construction for interpreting the CLA, set forth in MCL 570.1302(1), when considering whether an implied agency existed between Vereyken and Northtowne. This provision further states that a contractor need only "substantial[ly] compl[y]" with the CLA's provisions to create a valid lien. See *C D Barnes Assoc*, 300 Mich App at 415-418 (applying substantial-compliance standard to determine that contractor had met CLA affidavit requirement). The statute also provides a rule of construction for the CLA, when construction is necessary. See *Norcross*, 165 Mich App at 180 (liberally construing MCL 570.1107(4) and holding that the right of subrogation was "merely one type of right provided in the act").

There are two problems with applying the liberal-construction rule to the question whether an implied agency arose under the undisputed facts of this case. First, the pertinent statutory provision at issue is not ambiguous; therefore, it needs no construction, liberal or otherwise, to determine its meaning. See *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999); *Jeddo Drywall*, 293 Mich App at 451 (holding that when statutory language is clear and unambiguous, judicial construction is neither necessary nor permitted). Second, whether an implied agency arises is not a question of statutory interpretation but a matter of fact, dependent on common-law principles. See *Rowen & Blair Electric Co v Flushing Operating Corp*, 399

Mich 593, 600-602; 250 NW2d 481 (1977); *Sewell v Nu Markets, Inc*, 353 Mich 553, 559-561; 91 NW2d 861 (1958); and *Norcross*, 165 Mich App at 181 ("The existence and scope of an agency relationship are questions of fact for the trier of fact.").

The pertinent provision of MCL 570.1107(1) provides that "[e]ach contractor, subcontractor, supplier, or laborer who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property[.]" It is undisputed that Vereyken was an "owner" of the property under MCL 570.1105(3)[2] and that he contracted with AFP to install the fire suppression system. Because the meaning of the quoted portion of MCL 570.1107(1) is clear and unambiguous, under the principles of statutory construction, no further construction is needed and it must be enforced as written. *Sun Valley Foods*, 460 Mich at 236; *Jeddo Drywall*, 293 Mich App at 451.

Given that the undisputed facts of this case establish that Vereyken was the "owner" who contracted with AFP for the improvement, the only question is whether Vereyken was Northtowne's implied agent when he contracted with AFP. This is a factual question, *Norcross*, 165 Mich App at 181, governed not by the principles of statutory construction but by principles of the common law. Although the Legislature may alter the common law, it is well settled that the principles of the common law will not be abolished by implication. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 652; 513 NW2d 799 (1994) (stating that "well-settled common-law principles are not to be abolished by implication in the guise of

---

[2] MCL 570.1105(3) defines "owner" as "a person holding a fee interest in real property or an equitable interest arising out of a land contract."

statutory construction"). Our Supreme Court recently addressed the interplay between statutes and the common law by noting that the Court would "not lightly presume that the Legislature has abrogated the common law," of which the courts are "stewards," and would not "extend a statute by implication to abrogate established rules of common law." *Velez v Tuma*, 492 Mich 1, 11, 16; 821 NW2d 432 (2012). In this case, the trial court erred by conflating a rule of statutory construction, when construction of the statute was unnecessary, with the determination of a factual issue governed by principles of the common law.

"An implied agency must be *an agency in fact*; found to be so by reasonable deductions, drawn from *disclosed facts or circumstances*." *Weller v Speet*, 275 Mich 655, 659; 267 NW 758 (1936) (emphasis added). An agency cannot arise by implication if the alleged principal expressly denies its existence, but it may arise "from acts and circumstances within [the alleged principal's] control and permitted over a course of time by acquiescence or in recognition thereof." *Id.* Thus, *Weller* establishes that the facts and circumstances giving rise to an implied agency must be (1) known to the alleged principal, (2) within the control of the alleged principal, and (3) either explicitly acknowledged or at least acquiesced in by the alleged principal. These factors were reiterated by the Court in *Shinabarger v Phillips*, 370 Mich 135, 139; 121 NW2d 693 (1963). Specifically, an implied agency "must rest upon acts and conduct of the alleged agent known to and acquiesced in by the alleged principal prior to the incident at bar." *Id.* In sum, the facts and circumstances giving rise to an implied agency must be known to and acquiesced in by the alleged principal before the action of the alleged agent may bind the alleged principal. Moreover, the " 'implied agency must be based upon facts . . . for which the principal is

responsible . . . .' " *Id.*, quoting *Weller*, 275 Mich at 659 (citation and quotation marks omitted).

Here, the trial court found an implied agency between Vereyken and Northtowne on the basis that Northtowne "was aware of and acquiesced to" Vereyken's making improvements to the building when Vereyken was in default on his land contract. Specifically, the trial court found that Northtowne was

> aware that Vereyken was behind in the land contract payments and failed to pay the property taxes *during the time* AFP was installing the system. Thus, the fact that Northtowne permitted improvements to continue on the building, knowing that it could potentially get the property back, gave rise to an implied agency relationship. [Emphasis added.]

But Vereyken's not timely paying a portion of the winter 2006 property taxes by February 14, 2007[3] was the only fact on which the court relied that occurred *before* the April 10, 2007 Vereyken-AFP contract. The land contract between Vereyken and Northtowne in § 2(d) required Vereyken to pay any property taxes "before any penalty for non-payment attaches" and that under §§ 3(f), (g), and (i), 45 days after the failure to comply with a term of the contract, Northtowne could declare Vereyken in default, accelerate the balance due on the contract, and initiate forfeiture proceedings. Northtowne would also have had the option under § 3(c) of the contract to pay the property taxes that were due and add that amount to the balance due. See, e.g., *Bishop v Brown*, 118 Mich App 819, 827-828; 325 NW2d 594 (1982).

---

[3] Vereyken's failure to pay the winter 2006 taxes by February 14, 2007, would result in the assessment of a collection fee and interest charges. See MCL 211.44.

Although Vereyken's failure to timely pay the winter 2006 property taxes could have resulted in an action for forfeiture 45 days after February 14, 2007, there is nothing in the land contract that gave Northtowne any control over what improvements Vereyken made to the property. Hence, a critical element for finding an implied agency—control by the alleged principal—is missing. *Shinabarger*, 370 Mich at 139; *Weller*, 275 Mich at 659. To the extent that Vereyken's failure to timely pay the property taxes reflected on Vereyken's creditworthiness, that fact would have been equally available to AFP had it checked with the appropriate tax-collecting agency. Neither the CLA nor the common law as applied in *Norcross* imposes a duty on a land contract vendor to apprise potential contract parties of the financial strength or business prospects of its land contract vendee. Nor does a land contract vendor have a duty to foreclose on the land contract at the earliest possible time, i.e, at the first potential breach. As we will discuss, the land contract at issue permitted but certainly did not require the improvements Vereyken desired to make to the property. And Vereyken did not become Northtowne's implied agent by contracting for them with a third party. See *Rowen & Blair Electric Co*, 399 Mich at 602 (noting that if improvements are merely permitted there is no implied agency). Without "other considerations, mere possession with authority to alter or improve is by itself insufficient to create an agency by which the lessor's interest can be bound." *Id.* at 604. Moreover, no implied agency arises to contractually bind the landlord even when the landlord (vendor) retains architectural design control of improvements but the lease otherwise permits the improvements that the lessee desires to make. See *Sewell*, 353 Mich at 560. Consequently, the trial court erred by concluding that an implied agency arose in this

case because Northtowne had no control over Vereyken's ability to contract for improvements. *Shinabarger*, 370 Mich at 139; *Weller*, 275 Mich at 659. And because the improvements here were permitted but not required, no implied agency arose. *Rowen & Blair Electric Co*, 399 Mich at 602, 604; *Sewell*, 353 Mich at 560. The trial court also erred by finding that Northtowne had a duty to inform AFP of Vereyken's financial health or business prospects, thereby essentially imposing a duty on Northtowne to initiate land contract forfeiture proceedings at the earliest possible time.

The trial court also misapplied *Norcross* to the facts of this case. First, in *Norcross*, there was a bench trial, and the issue on appeal concerned whether the trial court had clearly erred by finding as matter of fact that an implied agency existed. *Norcross*, 165 Mich App at 176, 182. In this case, the trial court improperly engaged in fact-finding on a motion for summary disposition. *Amerisure Ins Co v Plumb*, 282 Mich App 417, 431; 766 NW2d 878 (2009). Second, unlike the instant case, in which Northtowne had no control over Vereyken's decisions to make improvements, the vendor in *Norcross* retained control over what improvements the vendee could make to the property in a separately executed option agreement. *Norcross*, 165 Mich App at 173-174. Indeed, the contract in *Norcross* prohibited any improvements without the written approval of the vendor until the option price was paid, which it never was. *Id*. at 173, 182. Third, unlike the instant case, in *Norcross* the vendor specifically approved both past and future improvements in writing while the improvements were being made to the property. *Id*. at 174-175. Thus, the critical differences between *Norcross* and the present case were that the *Norcross* vendor retained control over improvements and not only did not stop

the contractors from making the improvements when the vendee was in default but also specifically approved them.

We conclude that the trial court misread *Norcross* to impose a duty on a land contract vendor to apprise other potential contracting parties of its vendee of the vendee's financial status. Nothing in *Norcross* alters the general rule that each contracting party is responsible for performing its own due diligence. There is no basis in *Norcross* for altering the common-law rule of *caveat emptor* in real estate transactions. See *Roberts v Saffell*, 280 Mich App 397, 402-403; 760 NW2d 715 (2008) (discussing the doctrine of *caveat emptor* and various exceptions for fraud). Indeed, *Norcross* holds merely that where the facts establish that a vendor maintains control over the making of improvements and explicitly or implicitly authorizes them, an implied agency may arise. These are not the facts in this case.

In sum, the trial court erred by ruling that undisputed facts established as a matter of law that Vereyken was acting as Northtowne's implied agent when Vereyken contracted with AFP for the installation of a fire suppression system. Consequently, the trial court erred by ruling on that basis that AFP's construction lien attached to Northtowne's entire interest in the property as "the owner . . . who contracted for the improvement to the real property . . . ." MCL 570.1107(1).

### 2. DID THE CONTRACT REQUIRE THE IMPROVEMENT?

#### a. PRELIMINARY ARGUMENTS

Before discussing the merits of the trial court's ruling on this issue, we first consider and reject Northtowne's arguments that (1) the trial court erred proce-

durally by ruling in AFP's favor on this basis because AFP did not allege in its complaint or in its motion and brief for summary disposition that the contract required the improvement, and (2) Northtowne was denied due process—that is, notice and a meaningful opportunity to be heard—when AFP raised this issue for the first time at oral arguments on the parties' motions for summary disposition.

Northtowne first argues that the trial court erred by granting summary disposition to AFP after finding that § 2(c) of the land contract required Vereyken to install the fire suppression system because AFP did not plead that theory of liability under MCL 570.1107(1). AFP essentially concedes that it did not specifically plead § 2(c) of the land contract as a theory of liability but maintains that the trial court correctly ruled that provision required Vereyken to install the fire suppression system to operate his restaurant. Northtowne accepts that a trial court may sua sponte grant summary disposition if the pleadings show that a party is entitled to judgment as a matter of law, MCR 2.116(I)(1), but it argues that the trial court erred by doing so because the land contract was not part of the pleadings, MCR 2.110(A), even though it was attached to AFP's complaint as an exhibit. Northtowne contends that the land contract did not become part of the pleadings under MCR 2.113(F)(2) because it was not the basis of AFP's claim under MCR 2.113(F)(1).

We reject Northtowne's procedural argument based on the court rules. First, establishing the land contract vendor-vendee relationship between Northtowne and Vereyken with respect to the property was an essential element of AFP's claims. That is, it was necessary for AFP to establish that both Northtowne and Vereyken

were "owners" under the CLA. MCL 570.1105(3).[4] Consequently, "a claim or defense [was] based on a written instrument," the land contract, MCR 2.113(F)(1), and therefore the land contract attached as an exhibit to AFP's complaint was "a part of the pleading for all purposes," MCR 2.113(F)(2). Because the land contract was part of the pleadings in this case, the trial court could grant summary disposition under MCR 2.116(I)(1), which provides: "If the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay."

Second, even if the land contract had not been part of the pleadings, it was attached to other documents submitted to the trial court for the purpose of deciding the parties' motions for summary disposition. Specifically, Northtowne submitted the land contract as an exhibit by itself and as an attachment to the affidavit of Northtowne partner Randall Atwood. Under MCR 2.116(I)(1), a trial court may grant summary disposition to a party entitled to judgment as a matter of law in two ways: (1) if "the pleadings show" that a party is entitled to it, and (2) "if the affidavits or other proofs show that there is no genuine issue of material fact . . . ." See *Boulton v Fenton Twp*, 272 Mich App 456, 462-463; 726 NW2d 733 (2006).

Additionally, MCR 2.116(I)(2) provides: "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." Northtowne submitted the land contract between it and Vereyken to the trial court in support of its own motion for summary disposition and argued that the contract

---

[4] See note 2 of this opinion.

did not require Vereyken to make improvements to the property. At the hearing on the parties' summary disposition motions, AFP argued that § 2(c) required Vereyken to install the fire suppression system because it was required by the building code to operate a restaurant. Northtowne argued that § 2(c) merely required the vendee to "keep" and maintain the premises in good repair. Thus, the meaning of § 2(c) of the land contract was properly before the trial court on the parties' motions for summary disposition either because the contract was part of the pleadings or because it had been submitted to the court as part of the documentary evidence to consider. Furthermore, the trial court properly concluded that although the parties differed about the meaning of § 2(c), it was still subject to interpretation by the court as a matter of law. See *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 355 n 3; 596 NW2d 190 (1999). Therefore, if § 2(c) of the land contract and the pertinent provision of MCL 570.1107(1) established that AFP was entitled to judgment as a matter of law, the trial court could properly grant AFP summary disposition under either MCR 2.116(I)(1) or MCR 2.116(I)(2).

The trial court's ruling granting summary disposition to AFP on the theory that § 2(c) of the land contract rendered Northtowne an "owner who has required the improvement," MCL 570.1107(1), did not deny Northtowne due process of law. Due process is a flexible concept requiring fundamental fairness by providing notice of the nature of the proceedings and a meaningful opportunity to be heard by an impartial decision-maker. *Reed*, 265 Mich App at 159. When invoking MCR 2.116(I)(1), a trial court must comply with the requirements of due process. *Al-Maliki v LaGrant*, 286 Mich App 483, 485-486; 781 NW2d 853 (2009). In this case, Northtowne had notice of and an

opportunity to be heard on the issue of whether the land contract required Vereyken to install a fire suppression system. Indeed, Northtowne raised the issue by submitting the contract to the court with its motion for summary disposition and arguing that the contract did not require Vereyken to install the fire suppression system. That the trial court decided otherwise did not deny Northtowne due process of law.

### b. THE MERITS

Whether the trial court correctly decided the issue on the merits is another matter. While the trial court correctly ruled that § 2(c) of the land contract required Vereyken in his use of the building to comply "with all police, sanitary and other regulations imposed by any governmental authority," this provision did not by itself require Vereyken to install a fire suppression system. Rather, the land contract permitted Vereyken to use the property in any way he desired. Nothing in the land contract compelled the property to be used as a restaurant. It was Vereyken's decision to convert the building into a restaurant that triggered the building code requirement for the installation of the fire suppression system. And it was the building inspector who compelled Vereyken's restaurant to close after it determined that AFP's sprinkler system did not comply with the building code. Northtowne took no action to enforce § 2(c) of the land contract to require that certain improvements be made after it learned that Vereyken intended to use the building as a restaurant. Although we recognize that this issue is a bit of a conundrum, we conclude that the trial court erred by determining that the land contract required Vereyken to install a fire suppression system. Rather, Vereyken decided to open a restaurant, and to do so, the building code and building

inspector required Vereyken to install a fire suppression system. In other words, for Vereyken to open a restaurant, he would have been required to install a fire suppression system regardless of whether § 2(c) was included in the land contract. Consequently, the trial court erred by ruling that under § 2(c) of the land contract, Northtowne was an "owner who has required the improvement" under MCL 570.1107(1).

In sum, the court rules permitted the trial court to consider this issue on the parties' motions for summary disposition, and the trial court did not deny Northtowne due process of law by doing so. But the trial court erred by concluding that the land contract between Northtowne and Vereyken "required the improvement." MCL 570.1107(1). Consequently, the trial court erred by ruling on this basis that AFP's construction lien attached to Northtowne's entire interest in the property.

II. DOCKET NO. 307504

A. STANDARD OF REVIEW

In general, the interpretation and application of the offer-of-judgment rule is reviewed de novo. *Castillo v Exclusive Builders, Inc*, 273 Mich App 489, 492; 733 NW2d 62 (2007). But the trial court's findings of fact underlying an award of attorney fees are reviewed for clear error. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296; 769 NW2d 234 (2009). A finding of the trial court is clearly erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *Id*. This Court reviews for an abuse of discretion the trial court's decision regarding whether to refuse to award attorney fees under the interest-of-justice exception, MCR 2.405(D)(3). *Derderian v Genesys*

*Health Care Sys*, 263 Mich App 364, 374; 689 NW2d 145 (2004); *Stitt v Holland Abundant Life Fellowship (On Remand)*, 243 Mich App 461, 472; 624 NW2d 427 (2000).

The trial court's determination of the reasonableness of an attorney fee is reviewed on appeal for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008); *J C Bldg Corp II v Parkhurst Homes, Inc*, 217 Mich App 421, 428; 552 NW2d 466 (1996). An abuse of discretion occurs "when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith*, 481 Mich at 526.

### B. DISCUSSION

AFP's argument that the trial court awarded attorney fees that were not "necessitated by [its] failure to stipulate to the entry of judgment," MCR 2.405(A)(6), is without merit. AFP has not established that the trial court clearly erred in determining that the attorney fees it awarded Etna were necessitated by AFP's rejection of Etna's offer of judgment. *Froling Trust*, 283 Mich App at 296. Nor has AFP presented any argument that the trial court abused its discretion regarding the amount of the attorney fee it assessed. *Smith*, 481 Mich at 526; *J C Bldg Corp*, 217 Mich App at 428.

There is no dispute in this case that the adjusted verdict[5] that Etna obtained against AFP was more favorable than the offer of judgment that AFP rejected by failing to respond to the offer within 21 days. MCR 2.405(C). Consequently, under MCR 2.405(D)(1), AFP was required to pay Etna's "actual costs incurred in the prosecution or defense of the action." See *Kopf v Bolser*,

---

[5] " 'Adjusted verdict' means the verdict plus interest and costs from the filing of the complaint through the date of the offer." MCR 2.405(A)(5).

286 Mich App 425, 429; 780 NW2d 315 (2009). The trial court was thus required to determine the actual costs that Etna incurred in the prosecution or defense of the action. MCR 2.405(D)(3); *Luidens v 63rd Dist Court*, 219 Mich App 24, 30; 555 NW2d 709 (1996). " 'Actual costs' means the costs and fees taxable in a civil action and a reasonable attorney fee for services necessitated by the failure to stipulate to the entry of judgment." MCR 2.405(A)(6). There must be a causal nexus between the attorney fees awarded and the rejection of the offer of judgment to qualify as "necessitated by" the rejection. *Castillo*, 273 Mich App at 493.

In this case, the record supports the trial court's ruling finding a nexus between the attorney fees it awarded and the rejected offer. AFP presents no meaningful argument that the trial court clearly erred in finding that the attorney fees it awarded were "necessitated by the failure to stipulate to the entry of judgment." MCR 2.405(A)(6); see also *Froling Trust*, 283 Mich App at 296; *Castillo*, 273 Mich App at 493. And AFP presents no argument at all that the trial court abused its discretion in determining a reasonable attorney fee. *J C Bldg Corp*, 217 Mich App at 428.

Moreover, AFP has failed to establish that the trial court abused its discretion by refusing to award attorney fees by applying the interest-of-justice exception of MCR 2.405(D)(3). *Derderian*, 263 Mich App at 374; *Stitt*, 243 Mich App at 472. MCR 2.405(D)(3) provides: "The court shall determine the actual costs incurred. *The court may, in the interest of justice, refuse to award an attorney fee under this rule.*" (Emphasis added). The purpose of MCR 2.405 is to encourage settlement and to deter protracted litigation. *Luidens*, 219 Mich App at 31. Viewed in light of this purpose, the "interest of justice" provision is the exception to a general rule, and

it should not be applied " 'absent unusual circumstances.' " *Id.* at 32 (citation omitted). "Factors such as the reasonableness of the offeree's refusal of the offer, the party's ability to pay, and the fact that the claim was not frivolous 'are too common' to constitute the unusual circumstances encompassed by the 'interest of justice' exception." *Derderian*, 263 Mich App at 391, quoting *Luidens*, 219 Mich App at 34-35. But the exception may be applied when an offer is made for the purpose of "gamesmanship" and not a sincere effort at negotiation. *Id.*, quoting *Luidens*, 219 Mich App at 35-36. In this case, AFP has failed to set forth unusual circumstances that would warrant a conclusion that the trial court abused its discretion.

First, AFP argues that it did the "heavy lifting" in prosecuting the construction lien claims against Vereyken and Northtowne, and that Etna merely "piggybacked" on AFP's efforts. This argument fails to establish an "unusual circumstance" because the trial court considered this fact in limiting its award of attorney fees to those actually necessitated by AFP's refusal to accept the offer of judgment, i.e., matters related to the time-price differential dispute.

Second, whatever merit there is to AFP's claim that Etna owes it an unrelated credit is irrelevant to this case because that claim is not part of this case. Hence, like a party's ability to pay, AFP's unrelated claim does not present an "unusual circumstance" requisite to invoke the "interest of justice" exception.

Last, AFP claims that Etna's offer of judgment was "gamesmanship" justifying invocation of the "interest of justice" exception because it was not much of a compromise and did too little to encourage settlement. But there was no case evaluation award to compare with Etna's offer of judgment to conclude that it was a

"gamesmanship" or *de minimis* offer. Rather, Etna's offer of judgment was only slightly more than what AFP admitted that it clearly owed to Etna. Moreover, AFP did not make a counteroffer in an effort to resolve the dispute between it and Etna. MCR 2.405(A)(2). The record also suggests that AFP was simply unwilling to compromise at all regarding paying any time-price differential to Etna. At best, AFP's rejection of the offer was reasonable. But the reasonableness of AFP's refusal of the offer does not "constitute the unusual circumstances encompassed by the 'interest of justice' exception." *Derderian*, 263 Mich App at 391; see also *Luidens*, 219 Mich App at 34-35.

The trial court ruled "that the interest of justice exception should [not] apply here. This time price differential claim by Etna has still not been paid years after entering into the contract that supplied materials to AFP. Plaintiff's argument in that regard is rejected." AFP's arguments on appeal do not establish that the trial court abused its discretion. *Derderian*, 263 Mich App at 374. Consequently, we affirm the trial court.

### III. CONCLUSION

In Docket No. 306215, we reverse the trial court's August 29, 2011 judgment to the extent it imposes a construction lien foreclosure judgment against Northtowne's interest in the subject property on the bases that Vereyken was the implied agent of Northtowne when Vereyken "contracted for the improvement to the real property" and that Northtowne was "an owner who has required the improvement." MCL 570.1107(1). We remand for modification of the judgment consistent with this opinion. We do not retain jurisdiction. Defendant Northtowne may tax costs pursuant to MCR 7.219 as the prevailing party.

In Docket No. 307540, we affirm the trial court because it did not clearly err in concluding that the attorney fees it assessed against AFP were necessitated by AFP's rejection of Etna's offer of judgment. MCR 2.405(A)(6). Further, AFP has not established that the trial court abused its discretion by not invoking the "interests of justice" exception. MCR 2.405(D)(3). Defendant Etna may tax costs pursuant to MCR 7.219 as the prevailing party.

RIORDAN, P.J., and K. F. KELLY, J., concurred with MARKEY, J.