*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ECI ENVIRONMENTAL CONSULTANTS & ENGINEERS LLC,

UNPUBLISHED
March 19, 2026
9:57 AM

Plaintiff-Appellant,

V

No. 372524
Oakland Circuit Court
LC No. 2020-185003-CB

HOUSE OF PROVIDENCE,

Defendant-Appellee.

Before: MALDONADO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

Plaintiff seeks reimbursement for work it allegedly did at defendant's behest and to defendant's benefit. But after a bench trial, the trial court found plaintiff's evidence incredible—particularly in light of its discovery- and evidentiary-related decisions and missteps—and entered judgment in defendant's favor. Plaintiff appeals that decision, asserting various due-process violations and traditional breach-of-contract theories. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant, House of Providence ("HOP"), is a nonprofit corporation that purchased land to use as a home and therapeutic recreation center for children in the foster-care system. Before it could develop the land for that purpose, it needed to conduct extensive environmental remediation. Accordingly, between 2017 and 2019, HOP paid plaintiff, ECI Environmental Consultants & Engineers LLC ("ECI"), to conduct site assessments and complete certain remedial work.

Due to the cost of the necessary remaining remediation, in 2019, HOP began pursuing a Brownfield Development Grant from the Michigan Department of Environment, Great Lakes, and Energy ("EGLE"). Though the parties dispute the extent of ECI's involvement in this process, they agree ECI played some role in preparing the grant application in tandem with HOP (the grant beneficiary) and Oakland County (the actual grant recipient). EGLE ultimately awarded the County a $1 million grant for the benefit of HOP's property, a requirement of which was an EGLE-approved work plan outlining grant-funded remedial measures. Whether on its own initiative or as part of an agreement with HOP, ECI prepared and submitted a draft work plan. EGLE never

-1-

approved that work plan, and HOP terminated the parties' working relationship after ECI failed to execute a written contract relative to the grant-related remedial work.

After learning that HOP retained a different consulting firm to undertake the remedial work, Lance Stokes—ECI's sole member[1] and employee—sent HOP a $287,803.30 invoice (the "Disputed Invoice"), purportedly for the time ECI and its subcontractors spent preparing the grant application and draft work plan. Although the Disputed Invoice covered about one year's worth of alleged work, Stokes prepared it in a single day and more than a month after HOP ended their working relationship. ECI then obtained a construction lien against the property and instituted this suit against HOP. Ultimately, ECI sought reimbursement of the $287,803.30 under alternate theories of breach of contract or unjust enrichment and quantum merit, as well as foreclosure of HOP's property in satisfaction of the construction lien.

At least two times during the lengthy discovery period that followed, HOP requested invoices and other documentation supporting the Disputed Invoice's subcontractor-related line items. But when discovery closed, both parties believed ECI failed to provide the requested documentation. HOP thus filed a motion in limine requesting the trial court prohibit ECI from introducing or relying upon any such records at trial, and the trial court granted in part HOP's motion, prohibiting ECI from introducing any records related to the subcontractor fees.

That order did not prohibit ECI from calling its subcontractors to testify at the eventual bench trial. ECI nevertheless chose not to do so and instead relied solely on Stokes's testimony and the Disputed Invoice to demonstrate the specific hours ECI and its subcontractors allegedly worked. HOP stipulated to the admission of the Disputed Invoice as a business record to the extent it reflected work purportedly done by Stokes himself, but moved to strike the subcontractors' line items on the bases that they constituted inadmissible hearsay within hearsay, circumvented the trial court's resolution of HOP's motion in limine, and lacked trustworthiness. The court reserved ruling and later sought clarification regarding whether ECI had any invoices from its subcontractors. ECI's trial counsel answered affirmatively, and the trial court allowed ECI an opportunity—after the close of proofs and over HOP's objection—to lay the foundation for the subcontractors' portions of the Disputed Invoice by filing those invoices after trial. But the trial court expressly warned that such invoices were "not to be created now"; rather, they had "to have existed at the time."

Accordingly, ECI filed itemized billings from its subcontractors, including an invoice from Campaign One, LLC (the "First Campaign One Invoice"). As HOP noted in its written objections to ECI's posttrial submissions, however, this invoice bore a March 2024 date—i.e., years after ECI allegedly received the bill in October 2020. Within this context, the trial court entered an order scheduling a hearing to take Stokes's testimony regarding the posttrial filings and hear HOP's objections. In that same order, the trial court stated that ECI's filings "call[ed] into question the date that they were created."

---

[1] ECI has two members, Stokes and Stokes Holdings, Inc. However, Stokes is the sole shareholder of Stokes Holdings, Inc.

Several days before the scheduled hearing, ECI filed additional documents to support the subcontractors' charges in the Disputed Invoice, including copies of October 2020 e-mails in which the subcontractors allegedly sent their invoices to Stokes. This supplemental filing also contained a different version of the Campaign One invoice (the "Second Campaign One Invoice"), this time bearing an October 2020 date (among other differences from the First Campaign One Invoice).

At the hearing, the trial court questioned Stokes regarding why the First Campaign One Invoice bore a posttrial date. Both Stokes and ECI's trial counsel were surprised by this line of questioning, apparently never having noticed the date discrepancy. Although they asked to present additional testimony and other evidence—none of which was prepared before the hearing—to prove the Campaign One invoice's true date, the court declined to allow ECI another opportunity to do so. In the court's view, the date on the First Campaign One Invoice indicated it may have been manufactured, which "call[ed] into question the entire case" and all of the other documents ECI had presented; ECI had ample time to provide the appropriate documentation, which had apparently been available to it for years, but repeatedly failed to do so; and the time to provide any additional explanation had passed.

The trial court thereafter entered a judgment of no cause of action in HOP's favor as to each of ECI's claims, concluding that ECI: (1) did not establish the existence or breach of a contract between ECI and HOP; (2) failed to meet its burden of proof relative to its unjust-enrichment and quantum-meruit claims; and (3) had not completed an improvement to HOP's property, as required to maintain the construction lien. The trial court also entirely adopted HOP's proposed findings of fact and conclusions of law; expressed concern with the authenticity of ECI's evidence; explained that ECI's posttrial submissions were "obliterated" by the inconsistent Campaign One invoices; and found ECI's evidence incredible. ECI unsuccessfully moved for a new trial,[2] then filed this appeal.

While this appeal was pending, in late 2024, ECI's trial counsel discovered he had served the subcontractors' invoices on HOP during discovery approximately three years earlier. ECI thus moved to remand to the trial court on the basis of the parties' mutual mistake regarding ECI's nonproduction of the invoices. This Court denied that motion, as well as ECI's subsequent motion for reconsideration. *ECI Environmental Consultants & Engineers LLC v House of Providence*, unpublished order of the Court of Appeals, entered March 19, 2025 (Docket No. 372524); *ECI Environmental Consultants & Engineers LLC v House of Providence*, unpublished order of the Court of Appeals, entered May 13, 2025 (Docket No. 372524).[3]

---

[2] Though ECI titled—and substantively framed—this filing as a motion for reconsideration, it later submitted a supplemental filing urging the trial court to treat its request as for a new trial. For the avoidance of confusion only, we refer to the filing as a motion for a new trial.

[3] This is the second time this dispute between ECI and HOP has come before this Court. See *ECI Environmental Consultants and Engineers, LLC v House of Providence*, unpublished per curiam opinion of the Court of Appeals, issued March 30, 2023 (Docket No. 361803). The subject of that appeal is not directly relevant to the resolution of the issues now before us.

-3-

## II. DUE PROCESS

In its first claim of error, ECI contends the trial court deprived it of due process by (1) failing to notify ECI of the court's specific concern with the date of the First Campaign One Invoice, and (2) refusing to allow additional testimony regarding the date discrepancy. We address each argument in turn, reviewing the legal question of whether ECI received due process de novo, *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 504; 844 NW2d 470 (2014), and the trial court's evidentiary decisions for an abuse of discretion, *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 153-154; 908 NW2d 319 (2017).

## A. NOTICE REGARDING DATE DISCREPANCY

ECI claims the trial court violated its due process rights by sua sponte raising issue with the First Campaign One Invoice's posttrial date without giving ECI notice or an opportunity to be heard. More specifically, ECI contends the trial court did not give it precise notice of the court's concern with the date on the First Campaign One Invoice, notice that such concern was dispositive, or an opportunity to combat the court's belief that ECI manufactured the First Campaign One Invoice after trial. We disagree.

"The United States and Michigan Constitutions provide that no person shall be deprived of property without due process of law." *Sandstone Creek Solar, LLC v Twp of Benton*, 335 Mich App 683, 712; 967 NW2d 890 (2021), citing US Const, Am XIV; Const 1963, art 1, § 17. "Due process is a flexible concept requiring fundamental fairness by providing notice of the nature of the proceedings and a meaningful opportunity to be heard by an impartial decision-maker." *AFP Specialties*, 303 Mich App at 514.

Here, the trial court did not deprive ECI of due process. Its prehearing order, entered after ECI's first posttrial filing, gave ECI notice of the court's concern with the authenticity of the subcontractors' invoices based on the date they were created. ECI similarly had an opportunity to be heard regarding the authenticity of its posttrial filings at the hearing, including the opportunity to combat HOP's prehearing objection to the date of the First Campaign One Invoice.

To the extent ECI claims to have lacked notice of the dispositive nature of the trial court's concern, such argument is unpersuasive given the centrality of the Disputed Invoice to ECI's claims, and the obvious negative impact the act or appearance of manufacturing evidence could have on a party's case. We likewise reject ECI's attempts to frame the date issue as one the trial court raised sua sponte. HOP, not the trial court, first raised the date discrepancy; ECI's trial counsel, by his own admission, just failed to notice it had done so.

"It is settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003). If any error occurred relative to ECI's inability to notice and explain the date on the invoice ECI itself submitted, it was not of the trial court's making. In sum, ECI's failure to adequately review its own filing in light of the court's order or avail itself of the opportunity to be heard does not amount to a due process violation.

## B. REFUSAL TO ALLOW ADDITIONAL TESTIMONY

ECI next contends the trial court abused its discretion and deprived ECI of due process when, at the posttrial hearing, it declined to hear testimony from Campaign One's principal, Henry Yanez, regarding the First Campaign One Invoice's date. This argument hinges upon ECI's characterization of Yanez's testimony as "rebuttal testimony." But "[r]ebuttal testimony is used to contradict, explain, or refute *evidence presented by the other party* in order to weaken it or impeach it." See *Lima Twp v Bateson*, 302 Mich App 483, 502; 838 NW2d 898 (2013) (quotation marks and citation omitted; emphasis added). Because ECI, not HOP, presented the evidence at issue, Yanez's testimony would not have constituted rebuttal testimony in the first place.

And even if it was rebuttal testimony, the trial court did not abuse its discretion by refusing to allow it. Contrary to ECI's assertions on appeal, the trial court did not decline to hear additional testimony because the *case* had gone on too long. Rather, it noted that ECI's repeated failure to produce the subcontractors' invoices or otherwise lay a foundation for the relevant items in the Disputed Invoice had gone on too long, and it declined to give ECI yet another opportunity to do so. Such determination did not fall outside the range of principled outcomes so as to constitute an abuse of discretion, *Mitchell*, 321 Mich App at 153-154, especially considering ECI only sought to introduce the additional testimony mid-hearing, after failing to notice the alleged error *in its own posttrial filing* beforehand. Nor did the trial court's refusal to hear additional testimony deprive ECI the opportunity to be heard; for reasons already discussed, ECI merely failed to avail itself of the opportunity given.

We further reject ECI's characterization of the trial court's concern with the First Campaign One Invoice's date as an unfounded allegation of manufactured evidence. ECI's own filings and proffered evidence, below and on appeal, indicate that Yanez created the First Campaign One Invoice after trial. For example, the two Campaign One invoices contain several differences. With its motion for a new trial, ECI offered an affidavit from Yanez explaining only one difference (the posttrial date), claiming it resulted from an automatic-date feature triggered when he reopened the invoice after trial. ECI champions this explanation in its appellate brief. Yet in its motion for remand, ECI acknowledged the additional differences and claimed they occurred when Yanez "*created the second invoice to ECI in March 2024 . . . .*" (Emphasis added.) Accompanying that motion was a second affidavit from Yanez, in which he claimed he recreated the invoice after trial without Stokes or ECI's trial counsel knowing he had done so.

Considering all of this, the trial court did not abuse its discretion or deny ECI due process by declining to allow additional testimony at the posttrial hearing.

## III. MUTUAL MISTAKE

ECI next contends the parties made a mutual mistake regarding ECI's production of the subcontractors' invoices during discovery, requiring the trial court to vacate its partial grant of HOP's motion in limine, vacate its judgement, and enter judgment in ECI's favor. To this end, ECI asks us to remand to the trial court for it to hear testimony regarding the alleged mutual mistake.

ECI raised this issue for the first time on appeal, making it unpreserved. *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 318; 885 NW2d 892 (2015). Attempting to sidestep this preservation problem, ECI argues that it could have raised this argument below in a motion for relief from judgment under MCR 2.612 and should therefore be able to "raise it via a direct appeal." But this Court's established preservation rules plainly contradict that proposition. See, e.g., *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227-228; 964 NW2d 809 (2020). What is more, because ECI did not discover the alleged mistake until more than a year after entry of the judgment, MCR 2.612(C)(2)'s time bar would have prohibited the motion ECI says it could have successfully filed.

Equally unavailing is ECI's assertion that it could not have raised the mutual-mistake claim earlier because it only discovered the mistake after initiating this appeal. "The purpose of the appellate preservation requirements is to induce litigants to do what they can in the trial court to prevent error and eliminate its prejudice, or to create a record of the error and its prejudice." *Glasker-Davis*, 333 Mich App at 228 (quotation marks and citation omitted). ECI's trial counsel claims he did not realize his previous production of the subcontractors' invoices earlier because his paper casefile was "massive." Yet at some point during this appeal, he accessed the relevant filing by merely reviewing his history of electronic filings in the trial court. We cannot discern, nor did ECI's trial counsel provide, any reason why he could not have reviewed the electronic filings—and thus realized the previous production and prevented these issues—earlier in the proceedings.

We similarly reject ECI's contention that manifest injustice will result if we decline to consider its mutual-mistake claim.[4] True, "issue preservation requirements only impose a general prohibition against raising an issue for the first time on appeal," *id*. at 227, and "this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice . . . ," *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 193-194; 920 NW2d 148 (2018) (quotation marks and citation omitted). But the "manifest injustice" of which ECI complains is, at most, an unfavorable judgment resulting in the loss of monetary compensation to which it claims entitlement, and "a litigant in a civil case must demonstrate more than a potential monetary loss to show a miscarriage of justice or manifest injustice." *Id*. at 194, citing *Napier v Jacobs*, 429 Mich 222, 233-234; 414 NW2d 862 (1987).

Considering no manifest injustice would result from our failure to consider this unpreserved claim, we decline to address it.

---

[4] ECI also claims we should consider its unpreserved mutual-mistake argument in the interest of judicial economy. But ECI has not provided any factual or legal support for this proposition, making it abandoned. See, e.g., *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) ("An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority."). Because ECI does not substantively address any avenues for this Court to consider its unpreserved claim of error other than manifest injustice, we limit our analysis accordingly.

## IV. ORAL CONTRACT

ECI further argues that the evidence at trial demonstrated the parties had an oral contract for ECI to prepare the grant application and workplan, such that ECI is entitled to reimbursement. We disagree.

This Court reviews de novo a trial court's conclusions of law in a bench trial, *Bodnar v St John Providence, Inc*, 327 Mich App 203, 212; 933 NW2d 363 (2019), including the question of whether a contract exists, *Avery v State*, 345 Mich App 705, 715; 9 NW3d 115 (2023). A trial court's factual findings are reviewed for clear error. *Id*. "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Astemborski v Manetta*, 341 Mich App 190, 195; 988 NW2d 857 (2022) (quotation marks and citation omitted).

"In order for a contract to be formed, there must be an offer and acceptance, as well as a mutual assent to all essential terms." *Bodnar*, 327 Mich App at 213. Mutual assent "is judged by an objective standard based on the express words of the parties and not on their subjective state of mind." *Id*. "The party seeking to enforce a contract bears the burden of proving that the contract exists." *AFT Michigan v State of Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). "Michigan courts will not lightly presume the existence of an enforceable contract because, regardless of the equities in a case, the courts cannot make a contract for the parties when none exists." *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 508; 853 NW2d 481 (2014) (quotation marks and citation omitted).

ECI contends "the evidence at trial showed that ECI and HOP had a meeting of minds for ECI to prepare the grant application and work plan." It cites in support (1) an August 2020 e-mail in which Jason Dunn, HOP's cofounder and chief executive officer, told Stokes that HOP appreciated his "prior hard work and effort" but would proceed with a different consultant if ECI did not execute a written contract; and (2) Stokes's testimony that he and Dunn discussed the details of the necessary work. Indeed, the e-mail on which ECI relies demonstrates the existence of a working relationship between the parties. Other evidence at trial likewise demonstrated some working relationship between them, that ECI prepared a draft work plan, and that ECI was involved to some extent in the grant application process.

But that there was a relationship does not mean there was an oral agreement for ECI to prepare the grant application and workplan. The only evidence concerning that proposition was trial testimony from Stokes and Dunn, and the Disputed Invoice. As Stokes tells it, the Disputed Invoice reflected work he and his subcontractors did to prepare the application and work plan, in accordance with his and Dunn's agreement that they would undertake such work at a specific hourly rate, apparently for an indeterminate and unlimited number of hours. But Dunn's trial testimony contradicted Stokes's. For example, Dunn denied authorizing ECI to prepare the grant application and work plan, agreeing to compensate ECI for doing so, or that Stokes told him ECI and its subcontractors would charge HOP for various items listed in the Disputed Invoice. He further testified that HOP's bylaws and operating procedures required all agreements to be in writing and approved by its board of directors, and the board would never approve a third-party contract with an indeterminate payment obligation. And though neither party denies that ECI contributed to the application and draft work plan, Dunn and Stokes offered conflicting testimony

regarding how much of the application ECI prepared and whether ECI drafted its work plan at HOP's direction.

These conflicting facts mean the existence of an oral agreement amounted to a credibility contest. After the posttrial hearing, the trial court expressly stated that it did not find ECI's evidence, including Stokes's testimony, credible. This is a determination to which we owe deference. *Astemborski*, 341 Mich App at 195. Here, and elsewhere, ECI asks this Court to upset virtually every credibility determination reached by the trial court in its appeal. As discussed throughout, however, this Court cannot discern a single instance where we are left with a definite and firm conviction that such an error occurred, including how the trial court made credibility determinations concerning the existence of an oral contract.

For these reasons, we conclude that ECI failed to meet its burden of proving the existence of an oral contract between the parties.

## V. GREAT WEIGHT OF THE EVIDENCE

ECI also claims the trial court's judgment was against the great weight of the evidence relative to its quantum-meruit claim.[5] Under clear-error review, *Avery*, 345 Mich App at 715, we again disagree.

To succeed on its quantum-meruit claim, ECI needed to establish "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 195; 729 NW2d 898 (2006). ECI takes issue with the trial court's findings as to the first element, arguing that the evidence at trial demonstrated ECI prepared the application and draft work plan, thereby bestowing a million-dollar benefit—the grant—on HOP. The trial court's judgment was against the great weight of the evidence, ECI claims, to the extent it concluded ECI did not conduct any work on the application or work plan at all and disregarded ECI's evidence on erroneous credibility grounds. ECI thus directs us primarily to evidence demonstrating its role in preparing those documents.

_____

[5] The operative complaint contains four distinct counts, each of which the trial court resolved in HOP's favor: (1) breach of contract, (2) unjust enrichment, (3) quantum meruit, and (4) foreclosure of the construction lien. ECI frames its great-weight argument as applying to its quantum-meruit and breach-of-contract claims but offers no substantive arguments as to the latter. Nor does ECI mention the trial court's resolution of its construction-lien or unjust-enrichment claims. Though "claims for unjust enrichment and quantum meruit have historically been treated in a similar manner," *Deschane v Klug*, 344 Mich App 744, 753; 2 NW3d 131 (2022) (quotation marks and citation omitted), ECI gives us no reason to extend its great-weight arguments to unjust enrichment in this instance. Indeed, despite discussing both unjust enrichment and quantum meruit together elsewhere in its appellate brief, ECI's great-weight argument omits unjust enrichment entirely. For these reasons, to the extent ECI claims the trial court's judgment is against the great weight of the evidence as to its breach-of-contract, unjust-enrichment, or construction-lien claims, we deem such arguments abandoned. See *Cheesman*, 311 Mich App at 161.

But the trial court did not find that ECI had done *no* work on the grant application and work plan. Rather, it found that (1) ECI had not completed the remedial work contemplated by the grant (as Stokes himself admitted), and (2) ECI failed to present credible evidence that it *bestowed a benefit* upon HOP. As to the latter, the trial court reasoned that HOP paid for all the work product ECI generated for HOP between 2017 and 2019, and ECI failed to demonstrate its generation of any new data or work product benefiting HOP's property relative to the $287,803.30 allegedly owed.

The record supports the trial court's quantum-meruit findings. Testimony and documentary evidence demonstrated that use of the grant funds required an EGLE-approved work plan, and ECI's draft work plan was never approved.[6] As for the application, both Stokes and Dunn testified that HOP fully paid ECI for the work it undertook before HOP began pursuing the grant. Dunn claimed several parties contributed to the application, not just ECI, and the only work product from ECI within the application was that for which HOP had already paid. Stokes's testimony and the Disputed Invoice were ECI's key pieces of evidence contradicting Dunn's claims, but the trial court found that each lacked credibility. "[T]he credibility and weight to be assigned to otherwise admissible evidence is a question for the trier of fact," *Solomon v Shuell*, 435 Mich 104, 128; 457 NW2d 669 (1990), and we are "especially deferential to the trial court's superior ability to judge of the relative credibility of witnesses," *Astemborski*, 341 Mich App at 195 (quotation marks and citation omitted). And as the trier of fact, the trial court was free to disbelieve all or any part of the parties' proffered evidence. *People v Fuller*, 395 Mich 451, 453; 236 NW2d 58 (1975); *Fraser Twp v Haney*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 368834); slip op at 7. Our review of the record does not leave us definitely and firmly convinced that the trial court was mistaken in its credibility determinations or quantum-meruit findings.

Though ECI insists the First Campaign One Invoice's posttrial date should not have impacted the trial court's credibility determinations, it offers no persuasive legal support for this proposition. Indeed, a trial court properly makes credibility determinations on the basis of the entire record. See *Avery*, 345 Mich App at 725 (explaining that the trial court's witness-credibility finding "was not clearly erroneous because it considered the entire record before it, including historical inconsistencies in [the witness's] conduct and inconsistencies in her various testimonies"). And to the extent ECI claims the trial court would have accepted Stokes's testimony as credible but for the date discrepancy, it bases this contention on an out-of-context statement the trial court made before hearing testimony from the defense witnesses or receiving clarification regarding the scope of the parties' dispute.

---

[6] At Stokes's pretrial deposition, ECI's trial counsel stipulated that ECI's draft work plan was never approved, and Stokes confirmed the accuracy of that stipulation. Yet during his trial testimony, Stokes insisted it had been approved and rejected the previous stipulation. Both Dunn and Daniel Gough—the state Brownfield grant coordinator who helped manage the grant for HOP's property—testified that ECI's work plan was never approved. ECI has not provided any documentary evidence supporting Stokes's trial claims to the contrary.

In sum, we are not definitely and firmly convinced the trial court was mistaken in the weight and credibility it afforded ECI's evidence, and ECI has failed to demonstrate that the judgment was against the great weight of the evidence relative to ECI's quantum-merit claim.[7]

## VI. ADMISSIBILITY OF SUBCONTRACTOR INVOICES

ECI next claims that the entire Disputed Invoice, including the subcontractors' line items, was admissible as a business record regardless of the separate admissibility of the underlying subcontractors' invoices. We disagree.

As explained, this Court reviews a trial court's evidentiary decisions for an abuse of discretion. *Mitchell*, 321 Mich App at 153. Preliminary admissibility determinations, however, are reviewed de novo, and underlying factual findings are reviewed for clear error. *Shivers v Covenant Healthcare Sys*, 339 Mich App 369, 373-374; 983 NW2d 427 (2021).

Although hearsay is generally inadmissible, MRE 802, ECI claims the trial court should have admitted the entire Disputed Invoice, including those portions describing work its subcontractors purportedly completed, as a business record under MRE 803(6). That rule provides that "[a] record of an act, transaction, occurrence, event, condition, opinion, or diagnosis" is not subject to the general prohibition against hearsay so long as:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with a rule prescribed by the Supreme Court or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. [MRE 803(6).]

The final requirement—trustworthiness—is "an express condition of admissibility." *Solomon*, 435 Mich at 128.

Though it is unclear whether the trial court excluded the subcontractors' portions of the Disputed Invoice as inadmissible hearsay or disregarded them on credibility grounds, ECI's arguments fail in either instance. First, the circumstances surrounding Stokes's creation of the

---

[7] In light of this conclusion, we need not consider ECI's additional claim that the trial court "had an independent duty to assess the value of the million-dollar benefit bestowed upon HOP by ECI's work" regardless of the admissibility of the subcontractors' invoices.

Disputed Invoice and inclusion of the subcontractors' charges indicated a lack of trustworthiness. Despite the Disputed Invoice covering about one year's worth of alleged work, Stokes claimed to have prepared it in a single day using his contemporaneous field notes (which he destroyed before trial) and invoices from his subcontractors (none of whom kept records of their alleged work or time as they completed it). When given an opportunity to lay the foundation for the subcontractors' charges after trial, ECI provided two versions of a single alleged invoice, one of which bore a posttrial date. Neither Stokes nor ECI's trial counsel could explain these discrepancies, thus failing to alleviate the trial court's concerns regarding the authenticity of ECI's posttrial filings. Accordingly, insofar as the trial court excluded the subcontractors' portions of the Disputed Invoice as untrustworthy under MRE 803(6), this did not fall outside the range of principled outcomes so as to constitute an abuse of discretion. And second, to the extent the trial court considered all or part of the Disputed Invoice incredible, we defer to its credibility determinations for the reasons already explained.

## VII.  REMAND BEFORE NEW JUDGE

Finally, ECI argues that we should remand this case for retrial before a new judge. But having concluded ECI has not presented any reason for us to disturb the trial court's judgment or remand for further proceedings, that request is moot.

## VIII.  CONCLUSION

For these reasons, we affirm the trial court's judgment. Having prevailed on appeal, HOP may tax costs pursuant to MCR 7.219.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock

-11-